**Richard Sitcha** *(A95 461 653) (Pro Se)*
c/o Andrew Cohen
1345 Beacon St.,
Brookline, MA 02146
(617) 277-6925

| | |
|---|---|
| **Richard Sitcha** *(A95 461 653)*<br>Petitioner,<br>- vs -\<br>Frederick MacDonald , High Sheriff,Franklin County House of Corrections, TOM RIDGE, Secretary, Department of Homeland Security; MICHAEL J. GARCIA, Assistant Secretary (Designee), Bureau of Immigration and Customs Enforcement ("BICE"); EDUARDO AGUIRRE, Acting Director, Bureau of Citizenship and Immigration Services ("BCIS); Bruce Chadbourne, **Interim** Director, BICE, Boston,<br>Respondents. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS<br><br>Civil Action No. 04-30090- MAP<br><br>**VERIFIED PETITIONER FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Petitioner, Richard Sitcha, presently confined at the Franklin House of Corrections, Greenfield, Massachusetts by way of application for a writ of habeas corpus pursuant to 28 U.S.C. §2241, says:

1. Petitioner is presently subject to a final order deportation (removal) issued by the Board of Immigration Appeals on February 25, 2004 and pursuant to that order of deportation he is presently being detained at the Franklin House of Corrections.

2. Petitioner commences this action to obtain his immediate release from detention, pursuant to 28 U. S .C. §§ 2241-2255, 28 U.S.C. § 2201, 28 U.S.C. § 1361. His continued detention under such circumstances is in violation of his rights under the Fifth Amendment to the United Constitution, and is prohibited by the federal statutes and regulations which determine the terms and conditions of his confinement.

## STATEMENT OF CASE

Prior Proceedings in the Immigration Court and Board of Immigration Appeals

11. Petitioner is a 42 years old male, native and citizen of Cameron. In a notice to appear the government charged him with being an nonimmigrant who remained in the U.S. longer than permitted. The Petitioner applied for relief from removal in the form of political asylum and withholding of removal. His claim was based on his participation and activity surrounding the Cameroon's government's responsibility for the disappearance of nine young men known as the Bepanda 9.

12. On January 16, 2003, the Immigration Judge granted Petitioner's application for asylum. The Department of Homeland Security ("DHS") filed a motion to re-open proceedings, claiming that it had new evidence that cast doubt on Petitioner's credibility. In support of its motion, DHS submitted an unsigned, undated, unidentified document containing information allegedly collected in response to questions posed to people in Cameroon, and an e-mail from the Cameroon embassy claiming that there are a lot of fraudulent asylum claims filed by Cameroonians and complaining of the work generated for embassy employees by fraudulently filed claims for asylum.

13. The Immigration Judge (IJ) granted DHS' motion to re-open over Petitioner's objection without a hearing on the merits of the motion. The IJ then conducted another merits hearing on Petitioner's asylum claim, which consisted of telephonic testimony by an embassy employee in Cameroon who claimed to have conducted telephone interviews with various individuals or their alleged representatives regarding certain issues in Petitioner's case. Following this testimony, the IJ issued a decision finding Petitioner not credible and denying his asylum claim. The IJ relied primarily on two parts of the testimony of the embassy employee: (1) that the employee spoke to the lead attorney investigating the Bepanda 9 case and the lawyer said that neither he nor his client, the mother of one of the missing boys, knew Petitioner; and (2) that a priest working on the Bepanda 9 case, to whom Petitioner had given a report denied, to the embassy employee that he knew Petitioner or that Petitioner had given him any report.

14. Petitioner timely appealed to the Board of Immigration Appeals, which dismissd his appeal on February 25, 2004.

## STATEMENT OF FACTS

15. Petitioner grew up in Cameroon with wealthy parents who own and operate a coffee and cocoa plantation and manage rental property. Petitioner earned his law degree in 1986. He began his bailiff internship in 1992. As part of his internship, he worked with an attorney, Ms. Kogla. He lived well in Cameroon, where he had his own house and a car. Petitioner married in 1992 and has two children. He has

been a member of the Catholic Church since birth.

16. Beginning in 2000, an armed branch of the government of Cameroon began to kill large parts of the population. In January 2001, this arm took nine children. The nine children were from Petitioner's tribe and two of them were children of a neighbor in his village, Madame Kouatou. She came to see him in February 2000. She knew that he knew some people in the government and she wanted to know if through his connections, he could help find her children.

17. Petitioner promised to help her. He went to the police station where the children were supposed to be. Through talking to people that he knew, he learned that it was likely that the children were no longer alive. Petitioner then agreed to help Ms. Kouatou press the government for an explanation, but asked that his name not to be used in conjunction with the case because it would be dangerous for him. Petitioner instructed the families to post fliers and stage government released him when he denied involvement with the case.

18. Petitioner continued to assist the families of the missing children. He met with a Catholic priest, Father Mukengeshayi and discussed his activities. Petitioner agreed to provide information to the priest that the priest sought to publish under his own name in a Catholic newspaper:

19. The families of the missing children and their supporters .continued to hold demonstrations and to encounter police resistance. On March 25,2001, there was a march with violent protests. The next day, officials visited Petitioner's .office. They searched his .office and said that they knew that he was behind the marches. They found a copy .of the report that Petitioner had given to the Catholic Priest. They handcuffed Petitioner . They took him to headquarters and interrogated him. He was imprisoned and tortured with beatings and other acts of debasement.

20. Petitioner's boss, Madame K..ogla demanded that he be brought in front. of the prosecutor .As a favor to him, the prosecutor agreed to release him .on bond, continued his case, and told him he had better flee. He was charged with working with the Catholics, which are considered the opposition t.o the government.

21. Petitioner went under the protection .of a priest. He was hospitalized for his injuries. With the assistance .of the priest, he obtained a visa and left Cameroon. He prepared his asylum application with out an attorney and with the belief that he would be able to tell his whole story at the interview.

**ISSUES PRESENTED**

22. 1. Did the IJ err In granting DHS' motion t.o re-open when the motion was not supported by affidavits or other evidentiary material and did not establish that the

evidence sought to be offered was material or was not available and could not have been discovered or presented at Petitioner's earlier asylum hearing?

2. Did the IJ err and violate Petitioner's due process rights when he granted DHS' motion to re-open without conducting a hearing on the motion and without informing Petitioner of the basis far the decision so that Petitioner could challenge it?

3. Did the IJ err and violate Petitioner's due process rights by relying on unreliable hearsay in making his adverse credibility finding against Petitioner after re-opening asylum proceedings?

## VIOLATIONS OF STATUTE, REGULATIONS, AND DUE PROCESS OF LAW

23.  I..  The Immigration Judge erred in granting DHS' motion to re-open because the motion did not comply with the requirements of 8 CFR 1003.2(c).

A judge's discretion to grant a motion to re-open is limited by 8 CFR 1003.2 (c). This regulation provides, in relevant part:

> A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material.. . . .A motion to reopen shall not be granted unless it appears.. . that evidence sought to be offered is material and was riot available and could not have been discovered or presented at the former hearing. . .'.

The IJ should not have granted the motion submitted by the DHS in this case because: (1) it was not supported by affidavits or other admissible evidentiary material, (2) there is no showing that the material presented in the motion was not available or could not have been discovered and presented at the former asylum hearing, and (3) the assertions made in the motion misconstrued previous testimony and were not material.

   a.  The Immigration Judge should have denied the motion to re-open because it was not supported by affidavits or other evidentiary material.

A motion to re-open is designed to allow a party to re-open proceedings so that the IJ can consider new evidence. To decide whether to grant the motion, the IJ must be able to evaluate the "new"evidence to determine if its discovery warrants re-opening proceedings. The motion to re-open at issue in his case was not

supported by sufficient evidentiary material. While it is true that the Federal Rules of Evidence do not apply to immigration proceedings, it is also true that there are standards of reliability that apply out of the requirement of basic fairness. In recognition of this fact, 8 CFR 1003.2(c) specifies that the evidentiary material required to re-open a case take the form of affidavits or similarly acceptable and reliable documents. The motion presented by the DHS consists of a brief by the trial attorney, a one-page document entitled "Richard Sitcha Affair," and an e-mail or teletype message from the Cameroon embassy. None of these documents rises to even the lowest threshold of reliability.

The document entitled "-Richard Sitcha Affair" is not signed or dated, nor is the identity of the author anywhere on the document.. In the DHS brief, the trial attorney represents that the information came from an employee at the United States Embassy in Cameroon, but the document falls far short of being an affidavit. The document itself bears no indicia of reliability and, even under the relaxed standards in immigration court, cannot possibly satisfy the standard of evidence necessary to justify a remedy such as a motion to re-open.

The other document submitted in support of the motion to re-open is a three-page teletype from the embassy in Cameroon lamenting the amount of work that is generated for the embassy when Cameroonians file asylum claims. This document, which is dated February 2002, has absolutely no relevance to Petitioner's particular claim. It contains anecdotal evidence regarding false asylum claims filed by persons from Cameroon seeking economic advantage in the United States. Its prejudicial effect far outweighs its probative value, which is zero. It is nothing more than a device to Inflame the IJ into thinking that Petitioner made"a false asylum claim.

Because the material submitted by DHS hi support of its motion to re-open does is not in the form of affidavits or other reliable documentation, the IJ erred in granting the motion.

      b.     The Immigration Judge should have denied DHS' motion to re-open because DHS did not show that the material presented In the motion was not available or could not have been discovered and presented at Petitioner 's asylum hearing.

Motions to re-open are reserved for the presentation of evidence that was not available or could not have been discovered and presented at the former hearing. This limitation prevents the moving party, here the DHS, from getting a second bite at the apple and allows the opposing party, here Petitioner , a measure of finality. The federal district court in Walters v. Ashcroft, 291 F. Supp. 2d 237 (SDNY 2003) upheld the importance of this rule. In Walters, the petitioner sought a writ of habeas corpus to vacate a final order of deportation entered by the Board of Immigration Appeals ("BIA"), which vacated the Board's previous order

granting relief to the petitioner. The Board reversed its ruling based on the government's motion to reconsider.

In Walters, the government used its motion to reconsider as a vehicle for presenting evidence, not previously presented. that revealed that the petitioner was not eligible for the relief that he sought. After the BIA granted the motion to reconsider arid vacated the order granting the petitioner relief the petitioner filed suit in federal court, arguing that the BIA violated his rights to due process by granting a motion to reconsider based upon new evidence. The district court agreed with the petitioner, holding that the only proper way to introduce new evidence is a motion to re-open. In reaching its conclusion, the court explained. that because the evidence that the government sought to introduce was clearly available and discovered before the(BIA's first ruling granting the petitioner relief, it could not properly form the basis for a motion to re-open.

In this case, DHS is relying upon evidence that was previously available to re-open the case DHS based its motion to re-open on two pieces of "new" evidence, the investigation of a consular official and e-mail correspondence between the United States Embassy In Cameroon and the Secretary of State. Neither the investigation nor the e-mail is new evidence that the DHS could not-have discovered prior to Petitioner 's first asylum hearing. Either the consular official's investigation was undertaken before the asylum hearing and was available at the time and Is not new or It was undertaken after the asylum hearing as an afterthought by DHS. DHS knew the subject matter of the investigation and-the areas of questioning that It requested in the Investigation from the time that Petitioner submitted-his asylum application and attended his interview, both of which occurred before May 2002; The DHS had six months from the date of the asylum interview to the date of the asylum hearing to conduct any additional inquiries. The fact that DHS may have felt after Petitioner 's hearing that it did not do a thorough enough job before the hearing Is not the standard by which a motion to re-open is measured.

The second piece of evidence offered in the motion to reopen is e-mail correspondence dated February 6, 2002. On its face, this document cannot constitute newly discovered evidence for an asylum hearing that occurred in January 2003. Because the material that forms the basis for the DHS motion to re-open was not previously unavailable, it cannot form the basis for a motion to re-open. The IJ erred-in granting the motion.

    c.    The IJ erred in granting the motion to re-open because the assertions made in the motion misconstrued previous testimony and were not material.

DHS relied primarily upon a document entitled the "Richard Sitcha Affair" to support its motion to reopen. Based upon this document, the DHS contends that It

established the following material information: (1) Petitioner was not a bailiff in Cameroon; but had passed the entrance exam. This ""information was already established through Petitioner's own testimony regarding his employment both on his asylum application, during his interview, and during the asylum hearing. Tr., p. 17-18. He explained that he was a bailiff-in-training; (2) Petitioner was not involved in the investigation of the Bepanda 9. Petitioner discussed this information candidly during his asylum hearing. He did not claim to be an investigator or a lead investigator, he claimed only to be advising the son of one of mother's of the Bepanda 9 as to how to press the case to hold the government accountable and he asked that his name not be used in connection with these activities. Tr., p.30 ; and (3) Ms. Kouatua, the woman who Petitioner said contacted him for help with the case states she does not know him. This allegation is not based even on a one-step hearsay conversation between the investigation and Ms Kouatua but is the investigator's report from a telephone conversation that he had with a lawyer in Cameroon. The investigator does not claim that the lawyer spoke to Ms. Kouatua regarding this question, but only that the lawyer claimed that Ms. Kouatua does not know Mr. Sitcha.

The information presented by the DHS in support of its motion to reopen lacks relevance " or any indicia of reliability to allow it to be deemed material enough to justify the remedy of re-opening the case The IJ erred in granting the motion.

> II.    The Immigration Judge erred and violated Petitioner's due process rights when he granted the motion to reopen.

The liberty of an individual is at stake when the government seeks to deport an alien. Bridges v. Wixon, 326 U.S. 135, 154 (1945). Because of this, the Fifth Amendment entitles aliens to due process of law in deportation proceedings. Reno v. Flores, 507 U.S. 292, 307 (1995). Aliens are entitled to a full and fair hearing that accords with the principles of due process. In Walters v. Ashcroft, supra, a federal district court held that the BIA violated an alien's due process rights when, without a hearing, It granted a government Motion to Reconsider that supplemented the record In violation of the Code of Federal Regulations,

In the instant case, the DHS filed its motion to re-open and Petitioner filed a brief in opposition. On April 15, 2003, the IJ held a hearing, which Petitioner assumed would be his opportunity to argue why the IJ should deny the DHS motion. Instead of conducting a hearing on the merits of the motion, the IJ opened the hearing by describing it as a "reopened removal hearing: Counsel for Petitioner asked the IJ on what basis he reopened the case. The IJ never answered the question but proceeded to arrange the logistics for the next merits hearing.

By accepting without question the material submitted by the DHS in support of its Motion to reopen without first determining whether the information was material, sufficiently reliable, or unavailable or undiscoverable at Petitioner's asylum

hearing, and by denying Petitioner the opportunity to argue its inadmissibility or relevance, the IJ denied Petitioner due process and a hearing that comported with the principles of fundamental fairness.

> III. The Immigration Judge erred and violated Petitioner's due process rights by relying on unreliable hearsay in making his adverse credibility finding against Petitioner after reopening asylum proceedings.

'The due process test for admissibility of evidence in a deportation hearing is whether the evidence is probative and whether its use is fundamentally fair. Felzcerek v.INS, 75 F.3d 112 (2ndCir. 1996). In the evidentiary context, fairness is closely related to the reliability and trustworthiness of the evidence. Id. Hearsay is an out-of-court statement introduced to prove the truth of the matter asserted: Fed. R. Evid. 801(c). Hearsay is generally inadmissible because the statement is Inherently untrustworthy, the declarant may not have been under oath at the time of the statement, his or her credibility cannot be evaluated at trial, and he or she cannot be cross-examined.

In Ezeagwuna v. Ashcroft, 301.F.3d 116 (3d Cir. 2002) aff'd 325 F3d 396 (3rd Cir, 2003) the Third Circuit Court of Appeals considered the use of hearsay testimony in an asylum case involving a native of Cameroon. In that case, the Immigration and Naturalization Service ("INS") provided a two-page letter from the Vice Consul of the Embassy in Cameroon that set forth in summary fashion the results of an investigation conducted into five documents submitted by the Petitioner. The letter concluded that the documents were fraudulent. The Third Circuit held that relying on this inherently unreliable evidence to deny the Petitioner's asylum claim violated the Petitioner's due process rights.

In describing the evidence, the Third Circuit noted that the letter sought to report statements and conduct of declarants who were far removed from the evidence sought to be introduced. The evidence was information from individuals who purportedly told something to an investigator who told the information to the writer of the letter submitted to the court. The court found that these multiple layers of hearsay rendered the evidence unreliable and untrustworthy and that reliance on such evidence violated the Petitioner's due process rights.

The evidence that the IJ relied upon in this case to deny Petitioner's asylum claim is no more trustworthy than that rejected by the court in Ezeagwuna. The IJ focused on two areas of testimony by the embassy investigator: (1) the statement that the attorney for the families of the missing children said that the woman that he represents does not know Petitioner; and (2) the statement that the priest that the investigator spoke to said that he did not know Petitioner. This testimony suffers on several levels. First, it is hearsay, and in one case, it is hearsay within hearsay. Second, a government official is questioning people about the

involvement of others in an affair far which it is widely known that participants have been punished. In such a situation it is imperative that the declarants testify directly and that their statements be evaluated directly rather than funneled through a government functionary. In addition there is little information about the investigation itself. It appears at best to have been a series of telephone calls during which the interviewer could not be sure of the identity of the person to whom he is speaking or the speaker's understanding .of the individual about whom he was being questioned. As the court in Ezeaqwuna noted, the mere fact that the investigator works far the embassy cannot be used to bolster the quality of this unreliable and untrustworthy evidence.

The IJ"s reliance .on unreliable, untrustworthy telephonic hearsay testimony to reverse his finding on Petitioner 's credibility was in error and violated Petitioner's right to due process.

### Habeas Corpus Jurisdiction

24. In Saint Kelly Ford v. John Ashcroft, supra the First Circuit Court of Appeals specifically found the the writ of habeas corpus was not abolished by IIRAIRA the Circuit Court specifically relied upon Felker v. Turpin 518 U.S. 651 1996 that Congress did not expressly repeal or restrict habeas corpus jurisdiction under 2241. The Court concluded that there was no repeal of section 2241 under either AEDPA or IIRAIRA affirming the availability of habeas corpus jurisdiction in removal proceedings.

### Petitioner's Exhaustion of Administrative Remedies

25. Petitioner, has exhausted his remedies by appealing to the Board of Immigration Appeals. He is no longer able to file a petition for review with the First Circuit Court of Appeals. The only relief possible for the be Petitioner's is a habeas corpus petition before this Court.

### COUNT ONE
### Violation of Petitioner's Rights to Substantive Due Process of Law

26. The allegations set forth in paragraphs (1 to25) are repeated and realleged as if fully set forth herein.

27. The continued detention of Petitioner constitutes a violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution.

28. The Petitioner's rights have been violated in that the evidence accepted by the Immigration Judge was not trustworthy and reliable and that the Petitioner did not have a fair opportunity to respond to the allegations.

## COUNT TWO
### Violation of Petitioner's Rights to Procedural Due Process

29. The allegations set forth in paragraphs (1 to 25) are repeated and realleged as if fully set forth herein.

30. Petitioner's due process rights were violated in that he was not given and adequate opportunity to present rebuttal evidence to the evidence submitted by the government i.e. the telephonic testimony of the embassy investigator whose testimony was based on heresay and not conducting any interviews face to face. Petitioner's continued detention without a hearing before an impartial adjudicator infringes upon his right to procedural due process in violation of the Fifth Amendment to the united states Constitution.

31. As a result of Respondents' violation of Petitioner's constitutional rights, Petitioner has been detained unlawfully. Accordingly Petitioner is entitled to be immediately released from Petitioner s' custody and entitled to a new hearing on the merits of his case.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner Richard Sitcha respectfully requests that this Honorable Court grant the following relief:

a. Issue an Order:

   i. Declaring that Petitioner's continued detention is in violation of the Constitution and laws of the United States;

   ii. Granting this Petition for Writ of Habeas Corpus and releasing Petitioner under an order of supervision;

   iii. Granting petitioner reasonable attorneys' fees, costs, and all other disbursements pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

   v. Grant such other and further relief this Court may deem appropriate.

Respectfully submitted,
*Petitioner*

_____          _____
*Date*                           *Richard Sitcha*

## CETIFICATE OF SERVICE

I hereby certify that on this day of May _____ 2004, a copy of the enclosed **VERIFIED PETITIONER FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND SUPPORTING DOCUMENTATION** was mailed/delivered to the

    Frederick MacDonald , High Sheriff, Franklin County House of Corrections,
    160 Elm St.
    Greenfield, MA 01301

    TOM RIDGE, Secretary, Department of Homeland Security;
    U.S. Department of Homeland Security
    Washington, D.C. 20528

    MICHAEL J. GARCIA, Assistant Secretary (Designee),
    Bureau of Immigration and Customs Enforcement ("BICE");
    U.S. Department of Homeland Security
    Washington, D.C. 20528

    EDUARDO AGUIRRE, Acting Director, Bureau of Citizenship and Immigration Services ("CIS);
    U.S. Department of Homeland Security
    Washington, D.C. 20528

    Bruce Chadbourne, Interim Director, ICE, Boston,
    15 New Sudbury St.
    JFK Federal Building, Government Center
    Boston, MA 02203.

    Frank Crowely
    Litigation Unit of the Department of Homeland Security (INS)
    Room 425, 15 New Sudbury St.
    JFK Federal Building, Government Center
    Boston, MA 02203.

    U.S. Attorney's Office
    John Joseph Moakley, U.S. Courthouse
    Suite 9200
    1 Courthouse Way
    Boston, MA 02210

                                                               Andrew Cohen for
                                                              Richard Sitcha
                                                               1345 Beacon St.
                                                              Brookline, MA 02146

## *LIST OF DOCUMENTATION*

1) Decision of BIA, dated February 25, 2004.

2) Decision of Immigration Judge, dated September 18, 2003.

3) Decision of Immigration Judge, dated January 16, 2003.

4) Copy of <u>Kelly Saint Ford v. Ashcroft</u>.

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

Richard Sitcha (A95 461 653)
Petitioner,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Franklin__
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Frederick MacDonald, High Sheriff, Franklin County House of Corrections, TOM RIDGE, Secretary, Department of Homeland Security; MICHAEL J. GARCIA, Assistant Secretary (Designee), Bureau of Immigration and Customs Enforcement ("BICE"); EDUARDO AGUIRRE, Acting Director, Bureau of Citizenship and Immigration Services ("BCIS"); Bruce Chadbourne, Interim Director, BICE, Boston, Respondents.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Franklin__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard Sitcha
pro se

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Petitioner commences this action to obtain his immediate release from detention, pursuant to 28 U.S.C. §§ 2241-2255, 28 U.S.C. § 2201, 28 U.S.C. § 1361, his continued indefinite detention under such circumstances is in violation of her rights under the Fifth Amendment to the United Constitution, and is prohibited by the federal statutes and regulations which determine the terms and conditions of his confinement.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates, etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☒ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | Habeas Corpus: | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:**  ☐ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) __SITCHA v. MacDonald, et. al.__

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.  195, 368, 400, 440, 441-444, 540, 550, 625, 710, 720, 730,
            740, 790, 791, 820, 830, 840, 850, 890, 892-894, 895, 950.

   ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   460 IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).
   _____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   _____NO_____

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?_____
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY? (SEE 28 USC 2403) _____

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?_____

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)). YES_____ OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - (SEE LOCAL RULE 40.1(D)). YES___YES_____

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT? YES_____ (a)  IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?_____

9. IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? Western Section

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION____ OR WESTERN SECTION_____

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME___Richard Sitcha (pro se)_____

ADDRESS_____

TELEPHONE NO._____

(Category.frm - 09/92)

1)   Decision of BIA, dated February 25, 2004.

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 22041

**Decision of the Board of Immigration Appeals**

---

File: A95-461-653 - HARTFORD

In re: SITCHA, RICHARD

IN REMOVAL PROCEEDINGS

APPEAL

Date: FEB 25 2004

ON BEHALF OF RESPONDENT: Collins, Anthony D., Esquire

ON BEHALF OF DHS: Mapplebeck, Leigh, Assistant District Counsel

ORDER:

PER CURIAM. The respondent has appealed from the Immigration Judge's decision dated September 18, 2003. The Immigration Judge correctly granted the Department of Homeland Security's (the "DHS," formerly the Immigration and Naturalization Service) motion to reopen and correctly found that the respondent, a native and citizen of Cameroon, was not credible, and, as such, he properly denied the respondent's application for asylum and withholding of removal and his request for protection under the Convention Against Torture (I.J. at 6-8). See sections 208 and 241(b)(3) of the Immigration and Nationality Act; 8 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. § 1208.16-18.

We disagree with the respondent's assertion on appeal that the Immigration Judge erred in granting the DHS's motion to reopen because it was not supported by affidavits or other evidentiary material and did not establish that the evidence sought to be offered was material or was not available and could not have been discovered or presented at the respondent's initial individual hearing. To the contrary, the DHS's motion to reopen was supported by evidentiary material, including a partially completed investigation report conducted by consular officer Dana Francis, along with objective evidence indicating that many of the Cameroon asylum applications are fraudulent. (Exh. 7). 8 C.F.R. § 1003.23(b)(3). We note that the partial investigation report was not completed until after the respondent's initial individual hearing, and the full investigation was not expected to be completed until several months after the motion to reopen was filed (Exh. 7). Accordingly, the evidence sought to be offered was not available and could not have been discovered or presented at the respondent's initial individual hearing. 8 C.F.R. § 1003.23(b)(3).

We further disagree with the respondent's assertion that the Immigration Judge denied his due process rights when he granted DHS's motion to reopen without conducting a hearing on the motion and without informing the respondent of the basis for the decision so that the respondent could challenge it. Specifically, we find that the Immigration Judge was not statutorily required to hold a hearing on the DHS's motion to reopen, and any challenge with regard to the new facts submitted by the DHS in their motion to reopen could have been raised by the respondent at his subsequent individual hearing. See generally 8 C.F.R. § 1003.23(b)(3).

In addition, we disagree with the respondent's assertion on appeal that the Immigration Judge used unreliable hearsay in making his adverse credibility finding against the respondent after reopening asylum proceedings. First, Obianuju Ezeagwunu v. Aschroft, 301 F.3d 116 (3d Cir. 2002), aff'd 325 F.3d 396 (3d Cir. 2003), does not apply to the instant case because Obianuju Ezeagwunu v. Aschroft was raised in the Third Circuit and the respondent's case is raised in the Second Circuit. Further, it is well established that the strict rules of evidence are not applicable in immigration proceedings. See generally Matter of Wadud, 19 I&N Dec. 182, 188 (BIA 1984). Under the circumstances in this case, we conclude that it was appropriate for the Immigration Judge to consider the consular investigator's testimony in determining whether the respondent was credible.

Finally, the Immigration Judge correctly found that the respondent was not credible based on the inconsistencies between the respondent's affidavit, his supporting documents, and the consular investigator's testimony. The inconsistencies between the respondent's statements in his affidavit, his supporting documents, and the consular investigator's testimony regard events central to the respondent's asylum claim and are specific and cogent enough for us to conclude that he is not credible. Matter of A-S-, 21 I&N Dec. 1106 (BIA 1998). Specifically, the consular investigator testified that the lawyer of Mrs. Kouatou, a family member of a "Bepanda 9" victim whom the respondent alleged he assisted in an investigation of the "Bepanda 9" affair and from whom the respondent alleged to have received a supporting letter, relayed to the investigator that Mrs. Kouatou did not know anybody by the name of "Richard Sitcha" (Aff.; Exh. 4 at Tab Q; Tr. at 128-29). Further, the consular investigator testified that Father Jean Pierre Mukengeshay, a priest whom the respondent alleged he assisted in an investigation of the "Bepanda 9" affair and from whom the respondent alleged to have received a supporting letter, relayed to the investigator that he did not know the respondent nor did he ever receive any assistance from the respondent in his investigation of the "Bepanda 9" affair (Aff.; Exh. 4 at Tab S; Tr. at 129-31). Based on the foregoing inconsistencies, we agree with the Immigration Judge's adverse credibility determination. Accordingly, the appeal is dismissed.

_____
FOR THE BOARD