# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Richard Sitcha,**<br>**(A95 461 653)**<br><br>**V.**<br><br>**Frederick MacDonald, High**<br>**Sheriff, Franklin County**<br>**House of Corrections; Tom**<br>**Ridge, Secretary, Department**<br>**of Homeland Security; Michael**<br>**Garcia, Assistant Secretary**<br>**(Designee), Bureau of Immigration**<br>**and Customs Enforcement (ICE);**<br>**Eduardo Aguire, Acting Director,**<br>**Bureau of Citizenship and**<br>**Immigration Services("CIS");**<br>**Bruce Chadbourne, Interim Director,**<br>**ICE, Boston, Respondents** | **Case No. 04-CV-300090-MAP** |

## PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

In support of this Petitioner's Memorandum in Opposition to the Respondent's Motion to Dismiss, Petitioner alleges the following:

### BACKGROUND

1. Petitioner is subject to a final order of deportation (removal) issued by the Board of Immigration Appeals on February 25, 2004. Pursuant to that order deportation he is presently being detained at the Franklin House of Corrections. He has been held since

September 18, 2003, after his affirmative asylum petition was ultimately denied.

2. Petitioner is a 42 year old male, native and citizen of Cameroon. Petitioner affirmatively applied for asylum shortly after entering the U.S. He was initially granted asylum, then his asylum case was re-opened and subsequently denied. His claim was based on his participation and activity surrounding the Cameroon government's responsibility for the disappearance of nine young men known as the "Bepanda 9."

3. On January 16, 2003, the Immigration Judge granted Petitioner's application for asylum. The Department of Homeland Security (DHS) filed a motion to re-open proceedings, claiming that it had new evidence that cast doubt on the Petitioner's credibility. In support of its motion, DHS submitted an unsigned, undated, unidentified document containing information allegedly collected in response to questions posed to people in Cameroon, and an email from the Cameroon embassy claiming that there are a lot of fraudulent asylum claims filed by Cameroonians, and complaining of the work generated for embassy employees by fraudulently filed claims for asylum.

4. The Immigration Judge (IJ) granted DHS' motion to reopen over Petitioner's objection without a hearing on the merits of the motion. The IJ then conducted another merits hearing on the Petitioner's asylum claim, which consisted of telephonic testimony by an embassy employee in Cameroon who claimed to have conducted telephonic interviews with various individuals or their alleged representatives regarding certain issues in the Petitioner's case. Following this, the IJ issued a decision finding Petitioner not credible

and denying his asylum claim. The IJ relied primarily on two parts of the testimony of the embassy employee: (1) that the employee spoke to the lead attorney investigating the Bepanda 9 case and the lawyer said that neither he nor his client, the mother of one of the nine missing boys, knew Petitioner; and (2) that a priest working on the Bepanda 9 case, to whom Petitioner had given a report, denied to the embassy employee that he knew Petitioner or that Petitioner had given him any report.

5. Petitioner timely appealed to the Board of Immigration Appeals, which denied his appeal on February 25, 2004.

6. Petitioner grew up in Cameroon with wealthy parents who own and operate a coffee and cocoa plantation and manage rental property. Petitioner earned his law degree in 1986. He began his bailiff internship in 1992. As part of his internship, he worked with an attorney, Ms. Kogla. He lived well in Cameroon, where he had his own house and a car. Petitioner married in 1992 and has two children. He has been a member of the Catholic Church since birth.

7. Beginning in 2002, an armed branch of the government of Cameroon began to kill large part of the population. In January 2001, this arm took nine children. The majority of the nine children were from Petitioner's ethic group and two of them were children of a neighbor in his village, Madame Kouatou. She came to see him in February 2004. She knew that he knew some people in the government and she wanted to know if through his connections, he could help find her children.

8. Petitioner promised to help her. He went to the police station where the children were supposed to be. Through talking to people that he knew, he learned that it was likely that the children were no longer alive. Petitioner then agreed to help Ms. Kouatou press the government for an explanation, but asked that his name not be used in conjunction with the case because it would be dangerous for him. Petitioner instructed the families to post fliers and stage government protests. He denied involvement with the case when questioned by the government.

9. Petitioner continued to assist the families of the missing children. He met with a Catholic priest, Father Mukengeshayi and discussed his activities. Petitioner agreed to provide information to the priest that the priest sought to publish under his own name in a Catholic Newspaper.

10. The families of the missing children and their supporters continued to hold demonstrations and encounter police resistance. On March 25, 2001, there was a march with violent protests. The next day, officials visited Petitioner's office. They searched his office and said they knew that he was behind the marches. They found a copy of the report that the petitioner had given to the Catholic Priest. They handcuffed Petitioner. They took him to headquarters and interrogated him. He was imprisoned and tortured with beatings and other acts of debasement.

11. Petitioner's boss, Madame Kogla demanded that he be brought in front of the prosecutor. As a favor to him, the prosecutor agreed to release him on bond, continued

his case and told him he had better flee. He was charged with working with Catholics, which are considered the opposition to the government.

12. Petitioner went under the protection of a priest. He was hospitalized for his injuries. With the assistance of a priest, he obtained a visa and left Cameroon. He prepared his asylum application without an attorney and with the belief he would be able to tell his whole story at the interview.

13. The Petitioner was assaulted on February 2nd or 3rd, 2004 while in the custody of DHS by a fellow inmate and was treated for both his physical injuries and mental injuries. The Petitioner continued to receive therapy and treatment for the mental injuries. This therapy and treatment continued for some time after the February 2, 2004.

14. On February 10, 2004, the Petitioner writes to immigration court and informs them he has fired his attorney and therefore is "pro-se". See attached exhibit 1 (see February 10, 2004 letter to the BIA)

15. The Petitioner failed to appeal the BIA decision while recovering from the physical and mental injuries sustained in the February 2nd assault while in custody. Petitioner was in isolational cells from February 2nd through February 4th, 2004. The medical records substantiating this claim have been requested from the Osborne Correctional facility.

16. The Petitioner's Counsel requested a copy of the Petitioner's A-file from the United States Attorney's Office and was denied.

17. The Petitioner has strong ties to Hartford Connecticut, where has been working and residing since April 2001 when he arrived from Cameroon.

18. The Petitioner indicated he had $25,000 in assets to the court and was not eligible for a court appointed attorney.

19. The Petitioner is an involved parishioner of St. Anne/Immaculate Conception Church in Hartford, this parish has a number of supporters of the Petitioner. In addition, the Petitioner is supported by Students and faculty at Wesleyan University, Middletown Connecticut. In April 2003, Petitioner gave a lecture to French Research Department at Wesleyan University. This lecture was about why he left Cameroon and came to the U.S. He also assisted the French Department with their research projects.

## **VENUE**

Venue is proper in this district because Petitioner is currently detained in the Franklin House of Corrections, within the District of Massachusetts. 28 U.S. C. §1391(e).

## STANDARD OF REVIEW

Under both Rule 12(b)(6) and Rule 12(b)(1), the court must take as true the well pleaded facts as they appear in the petition and habeas exhibits, extending the petitioner every reasonable inference in his favor. See Kiely, 105 F.3d at 735; Negron-Gaztambidev v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). See Rashhed v. Duval, 57 F.3d 1061, 1995 WL365994, at *1 (1st Cir. June 19, 1995) (unreported) (habeas exhibits used in framing petition are part of the pleadings and may be considered on motion to dismiss). Pursuant to Rule 12(b)(6), the court may grant dismissal if "it appears beyond doubt that the [petitioner] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed. 2d 80(1957). Accord Roeder a. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987). Under Rule 12(b)(1), the petitioner, the party invoking jurisdiction, has the burden of proof to establish its existence, Murphy v. United States, 45 F.3d 520, 522(1stCir. 1995), and whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action," Fed. R. Civ. P. 12(h)(3).

## ARGUMENT

## I.   THIS COURT HAS SUBJECT MATTER JURISDICTION IN HABEAS CORPUS PROCEEDINGS

The First Circuit expressly has left open the question of district court habeas jurisdiction when the petitioner could have but did not file a petition for review in the

circuit court, but has noted that other circuits have found jurisdiction under such circumstances. In Seale v. INS, the court expressly reserved this question. 323 F.3d 150, 153 (1st Cir. 2003) (noting that "[a]t least one of the circuit courts" has found that the district court has habeas jurisdiction when petitioner could have sought direct review in from the circuit court). Seale further left open the question of whether the availability of habeas under these circumstances is subject to an exhaustion requirement.[1]

This court, in Arloo v. Ashcroft, has addressed the question and held that the district court did not have habeas jurisdiction when petition for review was available and "[p]etitioner has offered no explanation for his failure to exercise this clear avenue of judicial review" 239 F.Supp.2d 381, 383 (D. Mass 2003) (Ponsor, D. J.) (where petitioner "had a full opportunity to obtain review of the INS decision by the Court of Appeals but chose not to take it, the decision simply to decline that approach and proceed via *habeas* review in this court seems capricious.")

As noted, the First Circuit's later decision in Seale clearly left open the question of an exhaustion requirement. Even if exhaustion requirements apply, however, Mr. Sitcha is still clearly eligible for habeas relief. Unlike the petitioner in Arloo, petitioner here did not "capricious[ly] decline" the available option of petition for review. Instead, as a *pro se* petitioner, he failed to successfully navigate the complex jurisdictional rules that govern the judicial review process in his case. See Pereira Do Vale v. INS, 2002 U.S. Dist. LEXIS 12595 (D. R. I. June 25, 2002) (finding jurisdiction over *pro se* petitioner's habeas despite failure to petition for review in the First Circuit and holding that "federal

---

[1] In *Foroglou v. Reno*, the First Circuit affirmed the district court's dismissal of petitioner's habeas where the First Circuit had heard and rejected the petition for review and the alien was seeking an additional layer of judicial review beyond petition for review. 241 F.3d 111, 115 (1st Cir. 2001) (noting that petitioner "has had full access to this court for direct review of orders leading to his deportation")

district courts continue to have habeas jurisdiction to grant relief to review claims brought by aliens facing removal, to the extent such claims are based on legal grounds, either constitutional or statutory"; see also Hernandez v. Reno, 238 F.3d 50, 54 (finding district court habeas jurisdiction also available where petitioner offers excuse of ineffective assistance of counsel). In addition, this Petitioner was a victim on February 2nd, 2004 of an assault while in custody of DHS at the Osborne Correctional Facility in Connecticut and placed in isolational cells from February 2nd through February 4th, 2004. He then began to receive therapy for the mental trauma suffered from the assault. Therefore, the Petitioner was  pro-se and mentally traumatized during the period of time his appeal could have been filed with the Second Circuit Court of Appeals. This mental injury will be more thoroughly explained in the medical documentation requested from the Osborne Correctional Facility. Therefore, the Petitioner believes jurisdiction lies before this court based upon these reasons.


## II.     THE PETITIONER HAS SET FORTH A "COLORABLE CLAIM OF LEGAL" OR "CONSTITUTIONAL ERROR".

The Petitioner contends that a habeas court may review only "colorable claims of legal error" such as statutory or constitutional "pure" issues of law See Carranza v. INS, 277 F3d 65, 71-72(1st Cir. 2002). The  Petitioner claims the following statutory or constitutional issues of law.


1.     **The IJ erred in granting DHS' motion to re-open because the motion did not comply with the requirements of 8 CFR 1003.2 ( c ).**

A judge's discretion to grant a motion to reopen is limited by 8 CFR 1003.2(c). This regulation provides in relevant part:

A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material....A motion to reopen shall not be granted unless it appears...that evidence sought to be offered is material and not available and could not have been discovered or presented at the former hearing...

The IJ should not have granted the motion submitted by the DHS in this case because: (1) it was not supported by affidavits or other admissible evidentiary material, (2) there is no showing that the material presented in the motion was not available or could not have been discovered and presented at the former asylum hearing, and (3) the assertions made in the motion misconstrued previous testimony and were not material.

a.      **The Immigration Judge should have denied the motion to reopen because it was not supported by affidavits or other evidentiary material.**

A motion to re-open is designed to allow a party to re-open proceedings so that the IJ can consider new evidence. To decide whether to grant the motion, the IJ must evaluate the "new" evidence to determine if its discovery warrants re-opening proceedings. The motion to re-open at issue in this case was not supported by sufficient evidentiary material. While it is true that the Federal Rules of Evidence do not apply to immigration proceedings, it is also true that there are standards of reliability that apply out of the requirement of basic fairness. In recognition of this fact, 8 CFR 1003.2 ( c ) specifies that

the evidentiary material required to re-open a case take the form of affidavits or similarly acceptable and reliable documents. The motion presented by the DHS consists of a brief by the trial attorney, a one-page document entitled "Richard Sitcha Affair," and an e-mail or teletype message from the Cameroon embassy. None of these documents rises to even the lowest threshold of reliability.

The document entitled "Richard Sitcha Affair" is not signed or dated, nor is the identity of the author anywhere on the document. In the DHS brief, the trial attorney represents that the information came from an employee at the United States Embassy in Cameroon, but the document falls far short of being an affidavit. The document itself bears no indicia of reliability and, even under the relaxed standards in immigration court, cannot possibly satisfy the standard of evidence necessary to justify a remedy such as a motion to re-open.

The other document submitted in support of the motion to re-open is a three-page teletype from the embassy in Cameroon lamenting the amount of work that is generated for the embassy when Cameroonians file asylum claims. This document, which is dated February 2002, has absolutely no relevance to the Petitioner's particular claim. It contains anecdotal evidence regarding false asylum claims filed by persons from Cameroon seeking economic advantage in the United States. Its prejudicial effect far outweighs its probative value, which is zero. It is nothing more than a device to inflame the IJ into thinking that the Petitioner made a false asylum claim.

Because the material submitted by DHS in support of its motion to re-open is not the

11

form of affidavits or other reliable documentation, the IJ erred in granting the motion.

**b.    The Immigration Judge should have denied DHS' motion to re-open because DHS did not show that the material presented in the motion was not available or could not have been discovered and presented at the Petitioner's asylum hearing.**

Motions to re-open are reserved for the presentation of evidence that was not available or could not have been discovered and presented at the former hearing. This limitation prevents the moving party, here Petitioner, a measure of finality. The federal district court in <u>Walters v. Ashcroft,</u> 291 F. Supp. 2d 237 (SDNY 2003) upheld the importance of this rule. In <u>Walters</u>, the petitioner sought a writ of habeas corpus to vacate a final order of deportation entered by the Board of Immigration Appeals ("BIA"), which vacated the Board's previous order granting relief to the petitioner. The Board reversed its ruling based on the government's motion to reconsider.

In <u>Walters</u>, the government used its motion to reconsider as a vehicle for presenting evidence, not previously presented, that revealed that the petitioner was not eligible for the relief that he sought. After the BIA granted the motion to reconsider and vacated the order granting the petitioner relief the petitioner filed suited in federal court, arguing that the BIA violated his rights to due process by granting a motion to reconsider based upon new evidence. The district court agreed with the petitioner, holding that the only proper way to introduce new evidence is a motion to re-open. In reaching its conclusion, the

court explained that because the evidence that the government sought to introduce was clearly available and discovered before the (BIA's first ruling granting the petitioner relief, it could not properly form the basis for a motion to re-open.

In this case, DHS is relying upon evidence that was previously available to re-open the case DHS based its motion to re-open on two pieces of "new" evidence, the investigation of a consular official and e-mail correspondence between the United States Embassy in Cameroon and the Secretary of State. Neither the  investigation nor the e-mail is new evidence that the DHS could not have discovered prior to the Petitioner's first asylum hearing.  Either the consular official's investigation was undertaken before the asylum hearing and was available at the time and is not new, or it was undertaken after the asylum hearing as an afterthought by DHS.   DHS knew the subject matter of the investigation and the areas of questioning that it requested in the investigation from the time that the Petitioner submitted his asylum application and attended his interview, both of which occurred before May 2002; The DHS had six months from the date of the asylum interview to the date of the asylum hearing to conduct any additional inquiries. The fact that DHS may have felt after the Petitioner's hearing that it did not do a thorough enough job before the hearing is not the standard by which a motion to re-open is measured.

The second piece of evidence offered in the motion to re-open is e-mail correspondence dated February 6, 2002.  On its face, this document cannot constitute newly discovered evidence for an asylum hearing that occurred in January 2003.  Because the material that

13

forms the basis for the DHS motion to re-open was not previously unavailable, it cannot form the basis for a motion to re-open. The IJ erred in granting the motion.

**c.      The IJ erred in granting the motion to re-open because the assertions made in the motion misconstrued previous testimony and were not material.**

DHS relied primarily upon a document entitled the "Richard Sitcha Affair" to support its motion to re-open. Based upon this document, the DHS contends that it established the following material information: (1)The Petitioner was not a bailiff in Cameroon; but had passed the entrance exam. This information was already established through the Petitioner's own testimony regarding his employment both on his asylum application, during his interview, and during the asylum hearing. Tr., p. 17-18. He explained that he was a bailiff-in-training; (2) The Petitioner was not involved in the investigation of the Bepanda 9. The Petitioner discussed this information candidly during his asylum hearing. He did not claim to be an investigator or a lead investigator, he claimed only to be advising the son of one of the mother's of the Bepanda 9 as to how to press the case to hold the government accountable and he asked that his name not be used in connection with these activities. Tr., p.30; and (3) Ms. Kouatua, the woman who the Petitioner said contacted him for help with the case states she does not know him. This allegation is not based even on a one-step hearsay conversation between the investigation and Ms. Kouatua but is the investigator's report from a telephone conversation that he had with a lawyer in Cameroon. The investigator does not claim that the lawyer spoke to Ms. Kouatua regarding this question, but only that the lawyer claimed that Ms. Kouatua does

not know Mr. Sitcha.

The information presented by the DHS in support of its motion to re-open, lacks relevance or any indication of reliability to allow it to be deemed material enough to justify the remedy of re-opening. The case IJ erred in granting the motion.

**2.     The Immigration Judge erred and violated the Petitioner's due process rights when he granted the motion to re-open.**

The liberty of an individual is at stake when the government seeks to deport an alien. Bridges v. Wixon, 326 U.S.135, 154 (1945).  Because of this, the Fifth Amendment entitles aliens to due process of law in deportation proceedings. Reno v. Flores, 507 U.S. 292, 307 (1995).  Aliens are entitled to a full and fair hearing that accords with the principles of due process.  In Walters v. Ashcroft, supra, a federal district court held that the BIA violated an alien's due process rights when a without hearing, it granted a government Motion to Reconsider that supplemented the record in violation of the Code of Federal Regulations.

In the instant case, the DHS filed its motion to re-open and the Petitioner filed a brief in opposition.  On April 15, 2003, the IJ held a hearing, which the Petitioner assumed would be his opportunity to argue why the IJ should deny the DHS motion.  Instead of conducting a hearing on the merits of the motion, the IJ opened the hearing by describing it as a "re-opened removal hearing;" Counsel for the Petitioner asked the IJ on what basis

he re-opened the case. The IJ never answered the question but proceeded to arrange the logistics for the next merits hearing.

By accepting without question the material submitted by the DHS in support of its Motion to re-open without first determining whether the information was material, sufficiently reliable, or unavailable or undiscoverable at the Petitioner's asylum hearing, and by denying the Petitioner the opportunity to argue its inadmissibility or relevance, the IJ denied the Petitioner due process and a hearing that comported with the principles of fundamental fairness.

The due process test for admissibility of evidence in a deportation hearing is whether the evidence is probative and whether its use is fundamentally fair. Felzcerek v. INS, 75 F.3d 112 (2ndCir. 1996). In the evidentiary context fairness is closely related to the reliability and trustworthiness of the evidence. Id. Hearsay is an out-of-court statement introduced to prove the truth of the matter asserted: Fed. R. Evid. 801( c ). Hearsay is generally inadmissible because the statement is inherently untrustworthy, the declarant may not have been under oath at the time of the statement, his or her credibility cannot be evaluated at trial, and he or she cannot be cross-examined.

In Ezeagwuna v. Ashcroft, 301.F 3d 116 (3d Cir. 2002) aff'd 325 F3d 396 (3rd Cir, 2003) the Third Circuit Court of Appeals considered the use of hearsay testimony in and asylum case involving a native of Cameroon. In that case, the Immigration and Naturalization Service (INS) provided a two-page letter from the Vice Consul of the

Embassy in Cameroon that set forth in summary fashion the results of an investigation conducted into five documents submitted by the Petitioner. The letter concluded that the documents were fraudulent. The Third Circuit held that relying on this inherently unreliable evidence to deny the Petitioner's asylum claim violated the Petitioner's due process rights.

In describing the evidence, the Third Circuit noted that the letter sought to report statements and conduct of declarants who were far removed from the evidence sought to be introduced. The evidence was information from individuals who purportedly told something to an investigator who told the information to the writer of the letter submitted to the court. The court found that these multiple layers of hearsay rendered the evidence unreliable and untrustworthy and that reliance on such evidence violated the Petitioner's due process rights.

The evidence that IJ relied upon in this case to deny the Petitioner's asylum claim is no more trustworthy than that rejected by the court in Ezeagwuna. The IJ focused on two areas of testimony by the embassy investigator: (1) the statement that the attorney for the families of the missing children said that the woman that he represents does not know the Petitioner; and (2) the statement that the priest that the investigator spoke to said that he did not know the Petitioner. This testimony suffers on several levels. First, it is hearsay, and in one case, it is hearsay within hearsay. Second, a government official is questioning people about the involvement of others in an affair for which it is widely know that participants have been punished. In such a situation it is imperative that the

17

declarants testify directly and that their statements be evaluated directly rather than funneled through a government functionary. In addition there is little information about the investigation itself. It appears at best to have been a series of telephone calls during which the interviewer could not be sure of the identity of the person to whom he is speaking or the speaker's understanding of the individual about whom he was being questioned. As the court in <u>Ezeaqwuna</u> noted, the mere fact that the investigator works for the embassy cannot be used to bolster the quality of this unreliable and untrustworthy evidence.

The IJ's reliance on unreliable, untrustworthy telephonic hearsay testimony to reverse his finding on the Petitioner's credibility was in error and violated the Petitioner's right to due process.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that the court deny the Respondent's motion to dismiss. I verify under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully Submitted,

Dated: September 3, 2004

John P. McKenna, Esq.
Law Office of John P. McKenna, PC
1537 Main Street, Suite 305
Springfield, MA 01103

18

---

Certificate of Service

---

I hereby certify that I served a copy of the foregoing motion, by hand delivery, this 3rd day of September 2004 on:

Assistant United States Attorney
Karen Goodwin
U.S. Attorney's Office
1550 Main Street, Room 310
Springfield, MA 01103

John P. McKenna

Exhibit 1

1) Letter sent by Richard Sitcha dated February 10, 2004 to BIA

IN THE MATTER
OF: SITCHA RICHARD    CASE N° A95-461-653.

DEAR CLERK OF BOARD OF IMMIGRATION APPEALS,
I RESPECTFULLY ASK YOU TO CANCEL ALL THE ACTS MY LAWYER ANTHONY D. COLLINS SENT TO YOUR OFFICE ABOUT MY CASE. I'M VERY DESAPPOINTED BY HIS REPRESENTATION. I'M A SIMPLE SEEKER OF POLITICAL ASYLUM WHICH IS A CIVIL MATTER. I'M A PEACEFUL PERSON WHO HAS NEVER BEEN INVOLVED IN A CRIME OR A FELONY AND I HAVE NEVER BEEN HEARD ON ANY OTHER MATTER THAN POLITICAL ASYLUM NOR THAN ANY OTHER COURT THAN INS COURT. I NOTICED THAT AN UNFORTUNATE ERROR OF THE IMMIGRATION JUDGE IN MY CASE HAS SENT ME IN JAIL. I SENT A MOTION TO THE INS CLERK OFFICE AND COPY TO MY LAWYER. DESPITE THE FACT HE AGREED WITH ME ABOUT THE ERROR HE DON'T SEE I DON'T KNOW WHY, HE NEVER ASKED THE COURT TO SCHEDULE A DATE FOR A HEARING ABOUT MY MOTION. ON FEBRUARY 09-04. HE SENT ME A COPY OF AN APPEAL BRIEF AND COPY OF A REQUEST FOR EXTENSION OF TIME FILE BRIEF, HE HAS SENT TO YOUR OFFICE AND TO HOMELAND SECURITY TRIAL ATTORNEY UNIT 450 MAIN ST. HARTFORD CT ROO 483 ON JANUARY 5th -04. I CAN'T UNDERSTAND WHY FOR A CIVIL MATTER AS SEEKING FOR POLITICAL ASYLUM A COPY OF ALL THESE DOCU-MENTS SHOULD BE SENT TO THE TRIAL UNIT OF HOMELAND SECURITY INS-TEAD TO BE SENT TO INS ROOM 509 WHICH IS IN CHARGE OF CIVIL MATTER LIKE MINE. I NEVER BEEN IN ROOM 483. SINCE OCTOBER 1st DECISION I HAVE CONTESTED. I NEVER BEEN AGAIN TO THE COURT AND I HAVEN'T RECEIVED CO-PY OF ANY DECISION SINCE BY THAT DAY. I HAVE LOST CONFIDENCE IN MY LAWYER AND I DON'T WANT HIM TO REPRESENT ME ANYMORE. I WILL NOT AC-KNOWLEDGE ALL ACTS MY LAWYER DID ON MY BEHALF AFTER OCTOBER 31st 2003 AND BETWEEN JANUARY 16th 2003 AND OCTOBER 31st 2003 ONLY IF MY KE HAS SENT ME A COPY.

                    THANK YOU
                    RESPECTFULLY SUBMITTED
                    SITCHA RICHARD

I SITCHA RICHARD, CERTIFIES THAT THIS LETTER WAS SENT BY

U.S. POSTAGE TO

- ATTORNEY ANTHONEY D. COLLINS AT 664 FARMINGTON AVENUE

HARTFORD CT 06105 ON FEBRUARY 11-2004

- DEPARTEMENT OF HUMELAND SECURITY TRIAL ATTORNEY UNIT AT

450 MAIN ST HARTFORD CT 06103 ON FEBRUARY 11-2004