AJG

　　　　　The Court adopts the same statement of fact in its oral decision rendered in January of 2003. However, subsequent to the reopening of this matter, additional facts were presented which will be discussed.

　　　　　The Department of Homeland Security submitted a report from a counselor investigator. An assistant counselor investigator attached the American Embassy in Yaounde, Cameroon. The counsel investigator, Mr. Tiku, testified by telephone today. Mr. Tiku testified that his job duties are to investigate visa fraud, as well as other cases referred to him by the Department of Homeland Security and that he has done so for the previous eight months. Before that, he was hired as a clerk in the counselor section at the Embassy in 2001. He indicated that he must conduct many of his investigations by telephone due to resource constraints and the distance between Yaounde and Douala, where the respondent lived.

　　　　　Mr. Tiku testified that he did speak with a Madam Kogla. He affirmed that the respondent was a bailiff in Cameroon and stated that he had passed the exam and was waiting for the government to confirm and authorize his activities.

　　　　　The respondent also testified that he spoke with the Cameroon Bar Association representative for Littorla, a Charles Tchoungang. He testified that Mr. Tchoungang was the representative for the Cameroon Bar Association and was a lead attorney for the families of the Bepanda Nine. According to Mr.

A 95 461 653　　　　　　　　　　2　　　　　　　　　September 18, 2003

AJG

Tiku, Mr. Tchoungang told him that Mr. Sitcha played no role in the investigations. He also testified that he spoke to Kouatou Betheel, the mother of one of the missing boys. And she told Mr. Tchoungang that she did not know the respondent. He also testified that he, Mr. Tchoungang, in his role as an investigator and an attorney representing the Bepanda Nine families, did not know the respondent.

There was also an e:mail from Mr. Tiku regarding a conversation with a Father Jean Pierre Mukengesahy. He stated that this Jean Pierre Mukengesahy was a priest with the Douala Archdiocese. He indicated that he was trying to get information on the respondent regarding the Bepanda Nine. He stated, according to Mr. Tiku, that Father Jean Pierre did conduct investigations regarding the Bepanda Nine, but he did so alone. He also indicated that he did not receive any report from the respondent. He also indicated that he does not know the respondent.

The respondent submitted an additional letter from an Ngaloho Andre. See Exhibit 9, Tab B. This individual writes that he's a commandant in the Cameroon army for the last 15 years, and he has known the respondent since childhood. He writes that the respondent truly intervened in the search of truth in the affair of the Bepanda Nine. He indicated that he had to flee for his life from Cameroon. He also writes that Ms. Kogla and Ms. Kouatou, who said that they were questioned

A 95 461 653                               3                      September 18, 2003

AJG

regarding Mr. Sitcha. He writes that Ms. Kogla wrote a letter of support for the respondent and that the government closed her office and that Ms. Kouatou told her that not knowing the reasons for the questions, she said simply she did not know Mr. Sitcha.

### Statement of the Law

The Court will adopt the same statement of the law as its oral decision dated January 1993.

### Credibility

In the Court's decision of January 1993, the Court expressed significant concerns about the respondent's credibility. The Court noted some of the credibility concerns expressed by the Asylum Officer, which included some discrepancies about when his wife was detained allegedly, detained in May 2001 and some omissions regarding his hospitalization and why he allegedly took such risks. The Court had also expressed credibility concerns as to why the respondent was not mentioned in any of the articles about the Bepanda Nine and why he would go to such risks to appear at a demonstration and have families of the Bepanda Nine appear at his house. The Court had also plausibility concerns about how the respondent could obtain a U.S. visa despite being severely tortured. The Court find at that time, looking at all the evidence, that the evidence was consistent and corroborated, and that the respondent had adequately explained discrepancies. The Court concluded that while the Court had credibility concerns, they were not

A 95 461 653                               4                  September 18, 2003

AJG

sufficient to make a finding that the respondent was not credible.

After listening to the new evidence and testimony, the Court now finds that the respondent is not a credible witness. The Court had previously expressed doubts about the respondent's credibility and now based on the additional information, the Court cannot find that the respondent is a credible witness. The Court makes this finding based upon the following.

The Court would note that the issue about the respondent's exact status as a bailiff does not undercut the respondent's credibility. The main problems concerning the respondent's credibility are the counselor investigator's discussion with Charles Tchoungang and with Father Jean Pierre. The crux of this case is the respondent's alleged assistance to family members of the Bepanda Nine as a lead investigator. The investigator apparently spoke with Mr. Tchoungang who said that he did not know the respondent and even questioned the family member whom the respondent allegedly assisted. This additional letter provided by the respondent, see Exhibit 9, Tab B, notes that the write of this letter met Ms. Kouatou who asserted that she was questioned. However, she was apparently questioned not by the counselor investigator, but by her own attorney. The Court frankly discredits the credibility of this letter as it would be strange why she would tell whoever was calling her that she did not know Mr. Sitcha if it was her own attorney. The

A 95 461 653            5            September 18, 2003

AJG

Court simply does not find this letter to be credible. The Court finds that this is a significant and serious discrepancy if the lead attorney investigating this case does not know the respondent and apparently contacted his client, whom the respondent allegedly worked for in investigating this matter.

The other issue is his conversation with Father Jean Pierre. This is also a very important part of this case. What allegedly got the respondent in trouble was the report he had given to this priest or chancellor, which was allegedly published in the paper. He also alleges that this report was seized by the authorities which was the basis of his arrest and detention. Again, the investigator contacted Father Jean Pierre and who apparently did not know who the respondent was. He also indicated that he did not receive any reports. More importantly, there is a letter in Exhibit 4, Tab F, allegedly from Father Mukengesahy stating that he knew the respondent, he knew his situation. He also writes in the letter that due to his effort, they were able to publish an article about the execution of the Bepanda Nine. Based on that evidence and testimony, it appears that the two vital aspects of the respondent's credibility have been undercut. The Court does not find that the respondent is a credible witness.

### Analysis and Findings

Based on the Court's adverse credibility finding, the Court does not find that the respondent has established past

A 95 461 653                    6                    September 18, 2003

AJG

persecution.

The Court does not find that based on its adverse credibility finding, that the respondent has a well-founded fear of future persecution if he had to go back to Cameroon. Accordingly, the Court must deny his application for asylum.

Since the respondent's failed to meet the well-founded standard, it follows that he fails to meet the clear probability standard for withholding of removal. Accordingly, his application for withholding of removal under Section 241(b)(3) of the Act is denied.

The next determination is whether the respondent's established that it's more likely than not that he'd be tortured if returned to Cameroon. The Court finds that the respondent's failed to meet that burden of proof. The Court does not find that based on it's adverse credibility finding that the government of Cameroon would be inclined to torture the respondent.

It appears that the respondent does not have a valid passport. Accordingly, it appears that he appears to be ineligible for post-merits voluntary departure.

ORDERS

IT IS HEREBY ORDERED that the respondent's application for asylum under Section 208 of the Act is denied.

IT IS FURTHER ORDERED that the respondent's application for withholding of removal under Section 241(b)(3) of the Act is

A 95 461 653                              7                    September 18, 2003

AJG

denied.

    IT IS FURTHER ORDERED that the respondent's application for withholding of removal under the Torture Convention is denied.

    IT IS FURTHER ORDERED that the respondent be removed to Cameroon.

                                                                   _____
                                                                   MICHAEL W. STRAUS
                                                                   Immigration Judge

A 95 461 653                                      8                                    September 18, 2003

# **EXHIBIT #7**

653

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
450 MAIN ST., ROOM 509
HARTFORD, CT 06103-3015

In the Matter of:                         Case No.: A95-461-653
SITCHA, RICHARD
                                          Docket: HARTFORD, CONNECTICUT

RESPONDENT                                IN REMOVAL PROCEEDINGS

CUSTODY ORDER OF THE IMMIGRATION JUDGE

Request having been made for a change in the custody status of the respondent pursuant to 8 C.F.R. Part 236 and having considered the representations of the Immigration and Naturalization Service and the respondent, it is HEREBY ORDERED that:

The request for a change in the custody status of the respondent be granted and that the respondent be released from custody upon posting a bond of         $40,000 (not less than $1,500) and the conditions of the bond remain unchanged.

MICHAEL W. STRAUS
Immigration Judge
Date: Oct 1, 2003

Appeal: RESERVED (A/I/B) by respondent
Appeal Due By: Oct 31, 2003

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL (M) PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [✓] Alien's ATT/REP  [✓] INS
DATE: _____  BY: COURT STAFF _____
   Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

Form EOIR 1 - IT (Custody - REMOVAL)
SS7