# **EXHIBIT #8**



U.S. Department of Justice
Immigration and Naturalization Service

---

*Newark Asylum Office*
*1200 Wall Street West, 4th Floor*
*Lyndhurst, NJ 07071*

May 30, 2002
A#: 95 461 653  SITCHA, Richard

Richard SITCHA
371 Farmington Ave., Apt. B 204
Hartford, Ct. 06105

Referral Notice

Dear Mr. SITCHA:

This letter refers to your request for asylum in the United States (Form I-589).

Applicants for asylum must credibly establish that they have suffered past persecution or have a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, and that they merit a grant of asylum in the exercise of discretion.

For the reason(s) indicated below, the Immigration and Naturalization Service has not granted your claim for asylum:

- ☑ After careful consideration of all available information and explanations at your asylum interview, your claim was deemed not credible on the basis of:
    - ☑ Material inconsistency(ies) between your testimony and application and/or other evidence.
    - ☐ Material inconsistency(ies) within your testimony.
    - ☐ Material inconsistency(ies) with country conditions information.
    - ☐ Lack of detail(s) on material points.

**Brief Explanation:** Orally, applicant reported that he was in the hospital from 4/2/01 to 4/7/01 in Loum after he was allegedly beaten by government actors during his detention whereas his hospitalization was not listed in his I-589 or written statement.

Based on the above reasons(s), your case has been referred to an immigration judge. **This is not a denial of your asylum application.** You may request asylum again before an immigration judge and your request will be considered (without additional refiling) when you appear before an

(Rev. 1/5/01)                                                                                                                            1

immigration judge at the date and time listed on the attached charging document. The determinations that we have made in referring your application are not binding on the immigration judge, who will evaluate your claim anew. This referral includes the dependents included in your asylum application, who are listed on the first page of this notice.

If your asylum application was filed on or after January 4, 1995, the following information applies to you. If you appeared in-person on your scheduled appointment date to receive and acknowledge receipt of the decision, or you were informed not to appear in-person, this referral has no effect on when you may apply for employment authorization, which, according to our records, is 9/16/02. If, however, you failed to appear on a scheduled date to receive your decision, you may not apply for employment authorization on the date indicated. Your failure to appear at a scheduled appointment will extend the period of time in which you may apply for employment authorization by the number of days until your scheduled hearing before an immigration judge.

Sincerely,

*[signature]*

(For) Susan Raufer
Director,
Newark Asylum Office

(Rev. 1/5/01)

2

653

IMMIGRATION COURT
450 MAIN ST., ROOM 509
HARTFORD, CT 06103-3015

In the Matter of

SITCHA, RICHARD
 Respondent

Case No.: A95-461-653

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Jan 16, 2003.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[ ] The respondent was ordered removed from the United States to
                  or in the alternative to

[ ] Respondent's application for voluntary departure was denied and
 respondent was ordered removed to
 alternative to

[ ] Respondent's application for voluntary departure was granted until
  upon posting a bond in the amount of $ _____
 with an alternate order of removal to

[X] Respondent's application for asylum was (X)granted ( )denied
 ( )withdrawn.

[ ] Respondent's application for withholding of removal was ( )granted
 ( )denied ( )withdrawn.

[ ] Respondent's application for cancellation of removal under section
 240A(a) was ( )granted ( )denied ( )withdrawn.

[ ] Respondent's application for cancellation of removal was ( ) granted
 under section 240A(b)(1)   ( ) granted under section 240A(b)(2)
 ( ) denied ( ) withdrawn. If granted, it was ordered that the
 respondent be issued all appropriate documents necessary to give
 effect to this order.

[ ] Respondent's application for a waiver under section _____ of the INA was
 ( )granted ( )denied ( )withdrawn or ( )other.

[ ] Respondent's application for adjustment of status under section _____
 of the INA was ( )granted ( )denied ( )withdrawn. If granted, it
 was ordered that respondent be issued all appropriate documents necessary
 to give effect to this order.

[ ] Respondent's status was rescinded under section 246.

[ ] Respondent is admitted to the United States as a _____ until _____

[ ] As a condition of admission, respondent is to post a $ _____ bond.

[ ] Respondent knowingly filed a frivolous asylum application after proper
 notice.

[ ] Respondent was advised of the limitation on discretionary relief for
 failure to appear as ordered in the Immigration Judge's oral decision.

[ ] Proceedings were terminated.

[ ] Other: _____

Date: Jan 16, 2003
Appeal: Waived/Reserved   Appeal Due By:

MICHAEL W. STRAUS
Immigration Judge

ALIEN NUMBER: 95-441-653                              ALIEN NAME: SITCHA, RICHARD

---
CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL (M)   PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [X] ALIEN's ATT/REP  [ ] INS
DATE: 11/6/03   BY: COURT STAFF _____
Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
---

Q6

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Hartford, Connecticut


File A 95 461 653                                    January 16, 2003


In the Matter of


SITCHA, RICHARD              )          IN REMOVAL PROCEEDINGS
                             )
        Respondent           )


CHARGES:        Section 237(a)(1)(B) of the Immigration and
                Nationality Act - non-immigrant who remained
                longer than permitted.


APPLICATIONS:   Asylum; withholding of removal; withholding of
                removal under the Convention Against Torture.


ON BEHALF OF RESPONDENT:          ON BEHALF OF DHS:

Anthony Collins, Esquire          Leigh Mapplebeck, Esquire
664 Farmington Avenue             Assistant District Counsel - INS
Hartford, Connecticut  06105      Hartford, Connecticut


ORAL DECISION OF THE IMMIGRATION JUDGE

Introduction

The respondent is a 40-year-old male, native and citizen of Cameroon. The respondent is charged in the Notice to Appear with being a non-immigrant who remained longer than permitted. Based on the respondent's (indiscernible) to the Notice to Appear, removability has been established by clear and convincing evidence.

The respondent applied for relief in the form of asylum

AJG

under Section 208 of the Immigration and Nationality Act (the Act). Applications for asylum shall also be considered as applications for withholding of removal pursuant to Section 241(b)(3) of the Act. The Court will also consider the respondent's application for withholding of removal under the Convention Against Torture.

## Statement of the Facts

The respondent states that he was born into a rather wealthy family and that his father ran a plantation. He stated he has seven siblings in Cameroon. He stated that he received a law degree in 1986. He stated that he worked as a bailiff. The respondent indicated that this was not really a government job. He states that he did investigations and enforced the decisions of judges. He stated he had a house and a car. He indicates he was well-respected. He was married in 1992 and has two children.

The respondent indicates that he is from the Bamileke Tribe. He also indicates that he's active in the Catholic Church. He indicates that he was a member of a Catholic organization called Justice and Peace, which was organized by the Catholic Church to promote peace.

The respondent stated that in January 2001, some nine persons disappeared. There was already report of this incident in newspapers in Cameroon in middle of February 2001.

The respondent indicated that a mother of two of the person who disappeared came to him and wanted him to investigate.

A 95 461 653                                      2                          January 16, 2003

AJG

The respondent stated that he promised to help and that he did not accept money for this. He states he went to a police station where the people were originally taken and was told that they had gone to a Navy base. Then the respondent stated that he had known about it from the persons at the Navy base that they were removed by the base and presumably dead. Respondent stated on February 21, 2001, two of the relatives of the disappeared came to his house. The respondent told them what he heard. He also indicated that he advised them to unite with the other parents of the persons who had disappeared and he organized the (indiscernible). He indicated that a committee was formed called the Bepanda Nine. The respondent indicated he would help this group, but wanted to work behind the scenes because he wanted to have justice done. Respondent stated that he helped to draft flyers for an upcoming demonstration scheduled for March 4. Respondent stated that on several occasions, these persons came to his house.

The respondent stated that he was present at a demonstration organized on March 4, 2001, because he wanted to know what happened at the demonstration. He stated that about 3,000 or 4,000 people showed up and that the police attacked them with tear gas and water cannons. He stated that many of the demonstrators were arrested, including himself. One the newspapers, see Exhibit 4, page 17, indicates that only 100 demonstrators and seven named persons were arrested, which did

AJG

not mention the respondent. However, the State Department Report, see page 185 of Exhibit 4, mentions this demonstration. The respondent was held overnight with other demonstrators. He stated that the Chief of Police told him that the march was illegal. Respondent replied that he was not actually a demonstrator, that he was only passing by. He stated that he was released when his wife showed up with his identification card.

The respondent stated that on several occasions some relatives of the disappeared showed up at his house to help plan what the group would do.

The respondent then stated that he was requested to give a report to a Catholic newspaper about this disappearance. He stated that he gave the report to somebody from the Catholic Church on March 9, 2001. That article was subsequently published in the Catholic newspaper on March 28, 2001. This article quite specifically mentions people, including police officials who may have know about the disappearance.

The respondent that there were further demonstrations on March 11, 18 and 25, in which the respondent was not present. The respondent stated that he did not think that these people coming to his house would be subject to surveillance. He also indicated that other political groups started to get involved with this cause.

The respondent indicated on March 26, 2001, two civilians came into his office with a warrant. He stated that he

A 95 461 653                          4                    January 16, 2003

AJG

wrote that there were four men that came, because two waited in the vehicle outside. He indicates that his office was searched and that they found a copy of the report he repaired for the Catholic newspaper. He stated that based on that, they knew about his involvement with the Bepanda Nine.

The respondent indicates that he was taken to a location where he was severely tortured, including electrocuted and severely beaten; and was essentially degraded by the person who tortured him. The respondent indicated he could not provide all that information on the asylum application because it was painful for him.

The respondent stated that he was brought before a prosecutor on April 2, 2001, after his boss was contacted. Respondent said he was charged with instigating trouble against the government and revealing government secrets. He states that the prosecutor, who he knew from his job, told him that he would postpone the case and grant his temporary release which he had legal authority to do. He testified that the prosecutor told him he should leave, because he was in a dangerous position and that he must return to court on April 30, 2001.

Then the respondent indicated that his priest was called to pick him up. The respondent stated he was tortured so severely he could not walk. He stated that the priest took him to another town outside of Douala because he was afraid of the authorities in Douala. He stated that he was held for three or

A 95 461 653                              5                    January 16, 2003

AJG

four days at a hospital. The respondent did provide some medical records indicating that he was beaten. The respondent stated that he neglected to mention the medical treatment in the asylum application because he felt it wasn't important.

The respondent stated that the priest picked him up from the hospital and returned him to Douala and he stayed at the rectory. Respondent stated that he was afraid to contact his wife and children, because he was afraid that they would be harmed. He also stated that the priest told him he should leave Cameroon. He stated that a secretary apparently came to his house and got a photo and his passport, and that the respondent went to an U.S. Embassy on April 9, 2001. He stated that he told the Embassy that he was coming to visit. He stated that he was able to walk at that time, and that the injuries were such that they weren't so apparent to the counselor officer that he had been tortured. He stated that the visa was issued to him. He then indicated he left for the United States on April 26, 2001, by Switzerland and arrived in the United States the next day. He testified that a friend, an acquaintance of his was able to get him through the authorities in the airport.

Respondent stated that because of the phymatic nature of the torture, he felt he did not effectively prepare for his asylum application. He stated it was prepared by a non-attorney. He stated that the application for asylum was rushed in order to meet the one year deadline. He indicates that he does have some

A 95 461 653                         6                    January 16, 2003

AJG

money sent to him from Cameroon, and that he is active in the Catholic Church here in the United States that helps him out.

The respondent indicates that he's gotten some communication through letters from his wife. There is a letter from an attorney indicating that his wife and children were arrested on April 2, 2001, because the respondent failed to appear for his hearing. The letter reflects that the wife was released the next day. Respondent also provided a photocopy of a warrant issued on May 3, 2001. Respondent indicates that there was some confusion about how long his wife was arrested for. He stated that he was initially told that she was held until May 14, 2001. The respondent indicates that he did speak to his wife by telephone in the summer of 2002, and that she is afraid of the authorities. The respondent indicates that he's on a death list and if he would return to Cameroon, he would be killed.

The respondent provided a number of newspaper articles discussing the incident of the Bepanda Nine. The respondent also submitted a number of letters from individuals in Cameroon. One of them is from an attorney who indicates that his wife was arrested and his home was searched on May 2, 2001. See Exhibit 4, Tab O. There's also a letter from the Secretary General of the Movement of Justice and Peace of the Parish of Douala. See Exhibit 4, Tab P. That document states that the respondent had problems following the affair of the missing nine and that he was honorary president of the Movement for Justice and Peace. There

A 95 461 653                               7                      January 16, 2003

AJG

is also a letter from the Archdiocese of Douala. See Exhibit 4, Tab S, signed by the Chancellor of the Archdiocese of Douala. This letter's dated June of 2002. It states that thanks to the respondent's efforts, they published an article in a Catholic newspaper about these missing persons. It also states that the respondent was involved in the creation of the committee of nine. There is also a letter from the Cameroon National Chamber of Bailiffs. It indicates that the respondent's involved with this disappearance of the nine individuals. There's also a letter from Elise Kogla. This document states that he respondent worked for her and that he was arrested on March 26, 2001, relating to the Bepanda Nine. The respondent also provided some identity documents and other documents from Cameroon. Lastly, the respondent provided what he states is a warrant for his arrest dated May 3, 2001, based on false accusations and disturbances to law and order. See Exhibit 4, Tab II.

The Court viewed the State Department Report for Cameroon for 2001. It states that the government's human rights record still remained poor, and the government continued to commit serious human rights abuses. The article mention the incident in which the nine men were disappeared following arrest and that sources believed they were executed. It states that there are also other reported instances of summary executions. The Report states that numerous prisoners died in custody due to abuses by the security forces and harsh prison conditions.

AJG

     The page 173 and 174 of the Report describes the protest involving the Bepanda Nine. It states that the police forcefully, sometimes violently, suppressed weekly demonstrations. It states on March 20, 2001, the president ordered an investigation into that disappearance and transferred some military commanders. There are also reports that members of the C-9 were apparently attempted to be bribed to stop their protest. Then the article mentions a secret military trial of officers that may be related to this incident.

     The report also states that regarding torture, that a U.N. report stated that torture was widespread and used discriminantly against persons under arrest or detained. It states that the use of torture means is common. The U.N. report also stated that the vast majority of those in detention had been tortured or abused.

     The report also describes a demonstration on March 4, 2001, concerning the Bepanda Nine in which several persons were arrested. It also states that on April 26, 2001, five men who were attending a meeting at a private residence in support of the Bepanda Nine were arrested and then released on May 3, 2001.

Statement of the Law

     To qualify for asylum under Section 208 of the Act, the respondent must demonstrate that he is a refugee within the meaning of Section 101(a)(42)(A) of the Act. The definition of a refugee includes a requirement that the respondent demonstrate

A 95 461 653            9            January 16, 2003

AJG

that he has suffered past persecution and has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group or political opinion. In determining the respondent's eligibility for asylum, the Court will be guided by the regulations found at 8 C.F.R. Section 208.13(b). Since the well-founded fear standard required for asylum is more generous than the clear probability standard for withholding of removal, the Court will be guided by the well-founded fear standard when reviewing the respondent's application, because if he fails to meet the well-founded fear standard, it follows that he fails to meet the clear probability standard required for withholding of removal.

### Analysis and Findings

Essentially, the issue in this case boils down to the respondent's credibility. The Court finds that it is very clear that if the respondent's testimony is to be found credible, that he has established past persecution based on imputed political opinion.

The issue in this case is whether the respondent should be found credible or not credible. The Immigration Service Asylum Officer raised some concerns about the respondent's credibility. Those concerns are some inconsistencies including how long his wife was held by the authorities in May 2001 and some omissions concerning the respondent's hospitalization, as well as why the respondent would take such a risk by showing at

A 95 461 653                   10                   January 16, 2003

AJG

the demonstration and why he allowed Mr. Kouatou to come to his house.

The Court certainly has some credibility concerns about why the respondent, if he was such a well-know person in Cameroon, is not mentioned in either articles on Cameroon or in other human rights publications. The Court also finds it curious why he went to a demonstration and why he would take such risks to have members of the Bepanda Nine come to his house, as well as how the respondent was able to get a U.S. visa and to disguise the torture if it was such severe torture. The Court finds this to be legitimate concerns, concerning his credibility.

However, the Court in looking at all the evidence and testimony, finds that by and large the respondent's testimony is consistent with this asylum application and what he told the Asylum Officer. In addition, it appears that his testimony is generally corroborated by the documents he filed in support of his application. In addition, the respondent generally explained the discrepancies between his testimony and what he had either written down in his asylum application or he told the Asylum Officer.

Then the issue is whether these concerns with the respondent's credibility are significant enough to find the respondent's testimony to be not credible. The Court finds that while they are legitimate concerns, they do not rise to the level of a finding that the respondent's testimony lacks credibility.

A 95 461 653                                11                             January 16, 2003

AJG

The respondent has explained that he did feel strongly about this case. He also indicated he was involved with this organization called Justice and Peace. Respondent indicates that he was able to get the U.S. visa because he was able to walk by that time and was able to disguise the injuries. While the Court does have some concerns about the plausibility of the respondent's explanations, the Court simply cannot find that his testimony is not credible.

Accordingly, the Court finds that the respondent has met his burden of proof to establish past persecution, as well as a well-founded fear of future persecution. There appears to be no adverse factors in this matter. And, the Court will grant the respondent's asylum application in the exercise of discretion.

### ORDERS

IT IS HEREBY ORDERED that the respondent's application for asylum under Section 208 of the Act is granted.

MICHAEL W. STRAUS
Immigration Judge

65

```
                    IMMIGRATION COURT
                  450 MAIN ST., ROOM 509
                    HARTFORD, CT 06103-3015

In the Matter of
                                        Case No.: A75-461-653
SITCHA, RICHARD
     Respondent                         IN REMOVAL PROCEEDINGS

                   ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Sep 18, 2003.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.
[X] The respondent was ordered removed from the United States to Cameroon
                                            or in the alternative to
[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to
    alternative to
[ ] Respondent's application for voluntary departure was granted until
        upon posting a bond in the amount of $
    with an alternate order of removal to
[X] Respondent's application for asylum was ( )granted (X)denied
    ( )withdrawn.
[X] Respondent's application for withholding of removal was ( )granted
    (X)denied ( )withdrawn.
[ ] Respondent's application for cancellation of removal under section
    240A(a) was ( )granted ( )denied ( )withdrawn.
[ ] Respondent's application for cancellation of removal was ( ) granted
    under section 240A(b)(1)  ( ) granted under section 240A(b)(2)
    ( ) denied ( ) withdrawn. If granted, it was ordered that the
    respondent be issued all appropriate documents necessary to give
    effect to this order.
[ ] Respondent's application for a waiver under section _____ of the INA was
    ( )granted ( )denied ( )withdrawn or ( )other.
[ ] Respondent's application for adjustment of status under section _____
    of the INA was ( )granted ( )denied ( )withdrawn. If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.
[ ] Respondent's status was rescinded under section 246.
[ ] Respondent is admitted to the United States as a _____ until _____.
[ ] As a condition of admission, respondent is to post a $ _____ bond.
[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.
[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.
[ ] Proceedings were terminated.
[X] Other: CAT withholding was denied
    Date: Sep 18, 2003
    Appeal: Waived/Reserved   Appeal Due By:
                                            MICHAEL W. STRAUS
                                            Immigration Judge
867
    By respondent Oct. 20, 2003
```

ALIEN NUMBER: 95-441-659          ALIEN NAME: JACOBS, RICHARD

X

---

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY: MAIL (M)   PERSONAL SERVICE (P)
TO: [ ] ALIEN   [ ] ALIEN c/o Custodial Officer   [X] ALIEN's ATT/REP   [X] INS
DATE: 9/18/03   BY: COURT STAFF _____
    Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

```
            UNITED STATES DEPARTMENT OF JUSTICE
           EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
                      IMMIGRATION COURT
                    Hartford, Connecticut
```

File A 95 461 653                              September 18, 2003

In the Matter of

RICHARD SITCHA,              )     IN REMOVAL PROCEEDINGS
                             )
        Respondent           )

CHARGES:       Section 237(a)(1)(B) of the Immigration and
               Nationality Act - non-immigrant overstay.

APPLICATIONS:  Asylum; withholding of removal; withholding of
               removal under the Torture Convention.

ON BEHALF OF RESPONDENT:            ON BEHALF OF DHS:

Anthony Collins, Esquire            Leigh Mapplebeck, Esquire
664 Farmington Avenue               Assistant District Counsel
Hartford, Connecticut 06105         Hartford, Connecticut

## ORAL DECISION OF THE IMMIGRATION JUDGE

### Introduction

The respondent had an asylum hearing with this Immigration Court. On January 16, 2003, this Immigration Judge granted the respondent's application for asylum. The Department of Homeland Security filed a motion to reopen based on a counselor investigation done in Cameroon. This Immigration Judge, based on the information, reopened the case on March 13, 2003. The matter was set down for an individual hearing today.

### Statement of the Facts