SITCHA
Franklin County Jail
160 Elm Street
Greenfield Ma. 01301

03-09-05

04 CV 30090-MAP

Dear Clear,

Enclosed the Appeal Brief Anthony Collins did on my behalf.

I was told that the BIA does not accept late Appeal and that my appeal must be there before October 20th 2003 (See Exhibit E). But I never received anything showing that my appeal was done despite the deposit money of $1500°° he took until I saw this appeal brief on February 6th 2004 after I discovered that the decision of October 1st 2003 putting me in custody with $40.000 bond to be released was not concerning my case.

Also in the beginning of page 2 my lawyer said I was charged in a notice to appear then I applied for relief from removal in the form of asylum. Attorney Collins knows that is not true and trying to justify my illegal detention.

I have never seen the appeal brief of the October 1st 03 decision which the due date of appeal was October 31st 2003.

I thank you very much for your prompt action.

Sincerely,
[signature]

04CV30090-MAP

Anthony D. Collins, Esq.
Law Office of Anthony D. Collins, P.C.
664 Farmington Avenue
Hartford, CT 06105
(860)233-1616

Attorneys for Respondent

DETAINED

BOARD OF IMMIGRATION APPEALS

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

UNITED STATES DEPARTMENT OF JUSTICE

FALLS CHURCH, VA

| | |
|---|---|
| In the Matter of: | ) |
| | ) File No. A 95 461 653 |
| SITCHA, RICHARD | ) |
| Respondent | ) |
| | ) In Removal Proceedings |
| | ) |
| | ) February 3, 2004 |

**RESPONDENT'S APPEAL BRIEF**

1

## STATEMENT OF THE CASE

Respondent is 41-year-old male, native and citizen of Cameroon. In a Notice to Appear, the government charged him with being a non-immigrant who remained in the United States longer than permitted. Respondent applied for relief from removal in the form of asylum. His claim was based on his participation in activities surrounding the Cameroon government's responsibility for the disappearance of nine young men, known as the Bepanda 9.

On January 16, 2003, the Immigration Judge granted Respondent's application for asylum. On March 3, 2003, more than one month later, the Department of Homeland Security ("DHS") filed a motion to re-open proceedings, claiming that it had new evidence that cast doubt on Respondent's credibility. In support of its motion, DHS submitted an unsigned, undated, unidentified document containing information allegedly collected in response to questions posed to people in Cameroon, and an e-mail from the Cameroon embassy claiming that there are a lot of fraudulent asylum claims filed by Cameroonians and complaining of the work generated for embassy employees by fraudulently filed claims for asylum.

The Immigration Judge (IJ) granted DHS' motion to re-open over Respondent's objection and without a hearing on the merits of the motion. The IJ then conducted another merits hearing on Respondent's asylum claim, which consisted of telephonic testimony by an embassy employee who claimed to have conducted telephone interviews with various individuals or their alleged representatives regarding certain issues in Respondent's case. Following this testimony, the IJ issued a decision finding Respondent not credible and denying his asylum claim. The IJ relied primarily on two parts of the testimony of the embassy employee: (1) that the employee spoke to the lead attorney investigating the Bepanda 9 case and the lawyer said that neither he nor his client, the mother of one of the missing boys, knew Respondent; and (2) that a priest working on the Bepanda 9 case, to whom Respondent had given a report denied, to the embassy employee that he knew Respondent or that Respondent had given him any report.

Respondent timely appealed.

## STATEMENT OF FACTS

Respondent grew up in Cameroon with wealthy parents who own and operate a coffee and cocoa plantation and manage rental property. Transcript ("Tr."), p. 16. Respondent earned his law degree in 1986. Tr., p. 17. He began his bailiff internship in 1992. Tr., p. 17. As part of his internship, he worked with an attorney, Ms. Kogla. Tr., p. 18. He lived well in Cameroon, where he had his own house and a car. Tr., p. 21. Respondent married in 1992 and has two children. Tr., p. 22. He has been a member of the Catholic Church since birth. Id.

Beginning in 2000, an armed branch of the government of Cameroon began to kill large parts of the population. Tr., p. 25. In January 2001, this arm took nine children. Id. The nine children were from Respondent's tribe and two of them were children of a neighbor in his village, Madame Kouatou. She came to see him in February 2000. She knew that he knew some people in the government and she wanted to know if through his connections, he could help find her children.

Respondent promised to help her. Tr., p. 26. He went to the police station where the children were supposed to be. Through talking to people that he knew, he learned that it was likely that the children were no longer alive. Tr., p. 27, 28. Respondent then agreed to help Ms. Kouatou press the government for an explanation, but asked that his name not be used in conjunction with the case because it would be dangerous for him. Tr., p. 30. Respondent instructed the families to post fliers and stage demonstrations. Tr., p. 31. He was present at the first demonstration and was arrested. Tr., p. 32. The government released him when he denied involvement with the case. Tr., p. 33.

Respondent continued to assist the families of the missing children. Tr., p. 34. He met with a Catholic priest, Father Mukengeshayi and discussed his activities. Respondent agreed to provide information to the priest that the priest sought to publish under his own name in a Catholic newspaper. Tr., p. 35.

3

The families of the missing children and their supporters continued to hold demonstrations and to encounter police resistance. On March 25, 2001, there was a march with violent protests. Tr., p. 37. The next day, officials visited Respondent's office. They searched his office and said that they knew that he was behind the marches. They found a copy of the report that Respondent had given to the Catholic priest. They handcuffed Respondent. They took him to headquarters and interrogated him. Tr., p, 38. He was imprisoned and tortured with beatings and other acts of debasement. Tr., p. 39-40.

Respondent's boss, Madame Kogla demanded that he be brought in front of the prosecutor. As a favor to him, the prosecutor agreed to release him on bond, continued his case, and told him he had better flee. Tr., p. 41-42. He was charged with working with the Catholics, which are considered the opposition to the government. Tr., p. 43.

Respondent went under the protection of a priest. Tr., p. 45. He was hospitalized for his injuries. Tr., p. 45. With the assistance of the priest, he obtained a visa and left Cameroon. Tr., pr. 45-47.

He prepared his asylum application without an attorney and with the belief that he would be able to tell his whole story at the interview. Tr., p. 45.

## ISSUES PRESENTED

1. Did the IJ err in granting DHS' motion to re-open when the motion was not supported by affidavits or other evidentiary material and did not establish that the evidence sought to be offered was material or was not available and could not have been discovered or presented at Respondent's earlier asylum hearing?

2. Did the IJ err and violate Respondent's due process rights when he granted DHS' motion to re-open without conducting a hearing on the motion and without informing Respondent of the basis for the decision so that Respondent could challenge it?

3. Did the IJ err and violate Respondent's due process rights by relying on unreliable hearsay in making his adverse credibility finding against Respondent after re-opening asylum proceedings?

LAW OFFICE OF ANTHONY D. COLLINS, P.C.
664 FARMINGTON AVENUE • HARTFORD, CT 06105 • (860) 233-1616 • FAX (860) 233-8578 • FIRM JURIS No. 411509

## ARGUMENT

1. <u>The Immigration Judge erred in granting DHS' motion to re-open because the motion did not comply with the requirements of 8 CFR 1003.2(c).</u>

A judge's discretion to grant a motion to re-open is limited by 8 CFR 1003.2 (c). This regulation provides, in relevant part:

> A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material.... .A motion to reopen shall not be granted unless it appears ... that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing ...

The IJ should not have granted the motion submitted by the DHS in this case because: (1) it was not supported by affidavits or other admissible evidentiary material, (2) there is no showing that the material presented in the motion was not available or could not have been discovered and presented at the former asylum hearing, and (3) the assertions made in the motion misconstrued previous testimony and were not material.

a. The Immigration Judge should have denied the motion to re-open because it was not supported by affidavits or other evidentiary material.

A motion to re-open is designed to allow a party to re-open proceedings so that the IJ can consider new evidence. To decide whether to grant the motion, the IJ must be able to evaluate the "new" evidence to determine if its discovery warrants re-opening proceedings. The motion to re-open at issue in this case was not supported by sufficient evidentiary material. While it is true that the Federal Rules of Evidence do not apply to immigration proceedings, it is also true that there are standards of reliability that apply out of the requirement of basic fairness. In recognition of this fact, 8 CFR 1003.2(c) specifies that the evidentiary material required to re-open a case take the form of affidavits or similarly acceptable and reliable documents. The motion presented by the DHS consists of a brief by the trial attorney, a one-page document entitled "Richard Sitcha Affair," and an e-mail or teletype message from the Cameroon embassy. None of these documents rises to even the lowest threshold of reliability.

The document entitled "Richard Sitcha Affair" is not signed or dated, nor is the identity of the author anywhere on the document. In the DHS brief, the trial attorney represents that the information

5

came from an employee at the United States Embassy in Cameroon, but the document falls far short of being an affidavit. The document itself bears no indicia of reliability and, even under the relaxed standards in immigration court, cannot possibly satisfy the standard of evidence necessary to justify a remedy such as a motion to re-open.

The other document submitted in support of the motion to re-open is a three-page teletype from the embassy in Cameroon lamenting the amount of work that is generated for the embassy when Cameroonians file asylum claims. This document, which is dated February 2002, has absolutely no relevance to respondent's particular claim. It contains anecdotal evidence regarding false asylum claims filed by persons from Cameroon seeking economic advantage in the United States. Its prejudicial effect far outweighs its probative value, which is zero. It is nothing more than a device to inflame the IJ into thinking that Respondent made a false asylum claim.

Because the material submitted by DHS in support of its motion to re-open does is not in the form of affidavits or other reliable documentation, the IJ erred in granting the motion.

b. The Immigration Judge should have denied DHS' motion to re-open because DHS did not show that the material presented in the motion was not available or could not have been discovered and presented at Respondent's asylum hearing.

Motions to re-open are reserved for the presentation of evidence that was not available or could not have been discovered and presented at the former hearing. This limitation prevents the moving party, here the DHS, from getting a second bite at the apple and allows the opposing party, here Respondent, a measure of finality. The federal district court in <u>Walters v. Ashcroft</u>, 291 F. Supp. 2d 237 (SDNY 2003) upheld the importance of this rule. In <u>Walters</u>, the petitioner sought a writ of habeas corpus to vacate a final order of deportation entered by the Board of Immigration Appeals ("BIA"), which vacated the Board's previous order granting relief to the petitioner. The Board reversed its ruling based on the government's motion to reconsider.

In <u>Walters</u>, the government used its motion to reconsider as a vehicle for presenting evidence not previously presented, that revealed that the petitioner was not eligible for the relief that he sought. After the BIA granted the motion to reconsider and vacated the order granting the petitioner relief, the petitioner

6

filed suit in federal court, arguing that the BIA violated his rights to due process by granting a motion to reconsider based upon new evidence. The district court agreed with the petitioner, holding that the only proper way to introduce new evidence is a motion to re-open. In reaching its conclusion, the court explained that because the evidence that the government sought to introduce was clearly available and discovered before the BIA's first ruling granting the petitioner relief, it could not properly form the basis for a motion to re-open.

In this case, DHS is relying upon evidence that was previously available to re-open the case. DHS based its motion to re-open on two pieces of "new" evidence, the investigation of a consular official and e-mail correspondence between the United States Embassy in Cameroon and the Secretary of State. Neither the investigation nor the e-mail is new evidence that the DHS could not have discovered prior to Respondent's first asylum hearing. Either the consular official's investigation was undertaken before the asylum hearing and was available at the time and is not new or it was undertaken after the asylum hearing as an afterthought by DHS. DHS knew the subject matter of the investigation and the areas of questioning that it requested in the investigation from the time that Respondent submitted his asylum application and attended his interview, both of which occurred before May 2002. The DHS had six months from the date of the asylum interview to the date of the asylum hearing to conduct any additional inquiries. The fact that DHS may have felt after Respondent's hearing that it did not do a thorough enough job before the hearing is not the standard by which a motion to re-open is measured.

The second piece of evidence offered in the motion to reopen is e-mail correspondence dated February 6, 2002. On its face, this document cannot constitute newly discovered evidence for an asylum hearing that occurred in January 2003. Because the material that forms the basis for the DHS motion to re-open was not previously unavailable, it cannot form the basis for a motion to re-open. The IJ erred in granting the motion.

c. The IJ erred in granting the motion to re-open because the assertions made in the motion misconstrued previous testimony and were not material.

DHS relied primarily upon a document entitled the "Richard Sitcha Affair" to support its motion to reopen. Based upon this document, the DHS contends that it established the following material

7

information: (1) Respondent was not a bailiff in Cameroon, but had passed the entrance exam. This information was already established through respondent's own testimony regarding his employment both on his asylum application, during his interview, and during the asylum hearing. Tr., p. 17-18. He explained that he was a bailiff-in-training; (2) Respondent was not involved in the investigation of the Bepanda 9. Respondent discussed this information candidly during his asylum hearing. He did not claim to be an investigator or a lead investigator, he claimed only to be advising the son of one of mother's of the Bepanda 9 as to how to press the case to hold the government accountable and he asked that his name not be used in connection with these activities. Tr., p.30 ; and (3) Ms. Kouatua, the woman who respondent said contacted him for help with the case states she does not know him. This allegation is not based even on a one-step hearsay conversation between the "investigator" and Ms Kouatua but is the investigator's report from a telephone conversation that he had with a lawyer in Cameroon. The investigator does not claim that the lawyer spoke to Ms. Kouatua regarding this question, but only that the lawyer claimed that Ms. Kouatua does not know Mr. Sitcha.

The information presented by the DHS in support of its motion to re-open lacks relevance or any indicia of reliability to allow it to be deemed material enough to justify the remedy of re-opening the case. The IJ erred in granting the motion.

2. <u>The Immigration Judge erred and violated Respondent's due process rights when he granted DHS' motion to re-open without conducting a hearing on the motion and without informing Respondent of the basis for the decision so that Respondent could challenge it.</u>

The liberty of an individual is at stake when the government seeks to deport an alien. <u>Bridges v. Wixon</u>, 326 U.S. 135, 154 ( 1945). Because of this, the Fifth Amendment entitles aliens to due process of law in deportation proceedings. <u>Reno v. Flores</u>, 507 U.S. 292, 307 (1995). Aliens are entitled to a full and fair hearing that accords with the principles of due process. In <u>Walters v. Ashcroft</u>, <u>supra</u>, a federal district court held that the BIA violated an alien's due process rights when, without a hearing, it granted a government Motion to Reconsider that supplemented the record in violation of the Code of Federal Regulations.

LAW OFFICE OF ANTHONY D. COLLINS, P.C.
664 FARMINGTON AVENUE • HARTFORD, CT 06105 • (860) 232-1010

In the instant case, the DHS filed its motion to re-open and Respondent filed a brief in opposition. On April 15, 2003, the IJ held a hearing, which Respondent assumed would be his opportunity to argue why the IJ should deny the DHS motion. Instead of conducting a hearing on the merits of the motion, the IJ opened the hearing by describing it as a "reopened removal hearing." Tr., p. 92. Counsel for respondent asked the IJ on what basis he reopened the case. Tr. p. 93. The IJ never answered the question but proceeded to arrange the logistics for the next merits hearing.

By accepting without question the material submitted by the DHS in support of its Motion to re-open without first determining whether the information was material, sufficiently reliable, or unavailable or undiscoverable at Respondent's asylum hearing, and by denying Respondent the opportunity to argue its inadmissibility or relevance, the IJ denied Respondent due process and a hearing that comported with the principles of fundamental fairness.

3. <u>The Immigration Judge erred and violated Respondent's due process rights by relying on unreliable hearsay in making his adverse credibility finding against Respondent after reopening asylum proceedings.</u>

The due process test for admissibility of evidence in a deportation hearing is whether the evidence is probative and whether its use is fundamentally fair. <u>Felzcerek v. INS</u>, 75 F.3d 112 (2nd Cir. 1996). In the evidentiary context, fairness is closely related to the reliability and trustworthiness of the evidence. <u>Id</u>. Hearsay is an out-of-court statement introduced to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is generally inadmissible because the statement is inherently untrustworthy, the declarant may not have been under oath at the time of the statement, his or her credibility cannot be evaluated at trial, and he or she cannot be cross-examined.

In <u>Ezeagwuna v. Ashcroft</u>, 301 F.3d 116 (3d Cir. 2002) the Third Circuit Court of Appeals considered the use of hearsay testimony in an asylum case involving a native of Cameroon. In that case, the Immigration and Naturalization Service ("INS") provided a two-page letter from the Vice Consul of the Embassy in Cameroon that set forth in summary fashion the results of an investigation conducted into five documents submitted by the respondent. The letter concluded that the documents were fraudulent. The

9

Third Circuit held that relying on this inherently unreliable evidence to deny the respondent's asylum claim violated the respondent's due process rights.

In describing the evidence, the Third Circuit noted that the letter sought to report statements and conduct of declarants who were far removed from the evidence sought to be introduced. The evidence was information from individuals who purportedly told something to an investigator who told the information to the writer of the letter submitted to the court. The court found that these multiple layers of hearsay rendered the evidence unreliable and untrustworthy and that reliance on such evidence violated the respondent's due process rights.

The evidence that the IJ relied upon in this case to deny Respondent's asylum claim is no more trustworthy than that rejected by the court in <u>Ezeagwuna</u>. The IJ focused on two areas of testimony by the embassy investigator: (1) the statement that the attorney for the families of the missing children said that the woman that he represents does not know Respondent; and (2) the statement that the priest that the investigator spoke to said that he did not know Respondent. This testimony suffers on several levels. First, it is hearsay, and in one case, it is hearsay within hearsay. Second, a government official is questioning people about the involvement of others in an affair for which it is widely known that participants have been punished. In such a situation, it is imperative that the declarants testify directly and that their statements be evaluated directly rather than funneled through a government functionary. In addition, there is little information about the investigation itself. It appears at best to have been a series of telephone calls during which the interviewer could not be sure of the identity of the person to whom he was speaking or the speaker's understanding of the individual about whom he was being questioned. As the court in <u>Ezeagwuna</u> noted, the mere fact that the investigator works for the embassy cannot be used to bolster the quality of this unreliable and untrustworthy evidence.

The IJ"s reliance on unreliable, untrustworthy telephonic hearsay testimony to reverse his finding on Respondent's credibility was in error and violated Respondent's right to due process.

## CONCLUSION

For the foregoing reasons, respondent respectfully submits that the IJ erred in re-opening his case and then in denying his asylum request and asks this Board to reverse the IJ's decision and to reinstate the grant of asylum that the IJ originally granted to him.

Respectfully submitted,

ANTHONY D. COLLINS, ESQ.
Attorney for Respondent

## CERTIFICATION OF SERVICE

I, Anthony D. Collins, certify that this brief was sent mailed postage prepaid to the Department of Homeland Security, Trial Attorney Unit, 450 Main Street, Hartford, Connecticut 06103 on February 2, 2004.

Anthony D. Collins, Esq.
Law Office Of Anthony D. Collins, P.C.
664 Farmington Avenue
Hartford, CT 06105
Tel (860) 233-1616