UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD SITCHA               )
          Petitioner         )
                             )
              v.             ) CIVIL ACTION NO. 04-30090-MAP
                             )
FREDERICK MACDONALD,         )
HIGH SHERIFF OF THE          )
FRANKLIN COUNTY HOUSE OF     )
CORRECTIONS, ET AL.          )
          Respondents        )


MEMORANDUM AND ORDER REGARDING
RESPONDENTS' MOTION TO DISMISS
(Docket No. 8)

March 31, 2005

PONSOR, U.S.D.J.

## I.  INTRODUCTION

Petitioner, Richard Sitcha, is a native of Cameroon who is
currently detained by the respondent Sheriff at the request of
the Department of Homeland Security, for remaining in the United
States after his visa expired.  In 2002, Sitcha sought asylum in
this country, arguing that if he returned to Cameroon he would be
tortured or killed.  Initially, the Immigration Judge ("IJ")
allowed this application.  However, after granting the Department
of Homeland Security's motion to reopen the case based on new
evidence, the IJ reversed this decision, denied Sitcha's petition
for asylum, and issued a final order of deportation.

Sitcha appealed this decision to the Board of Immigration
Appeals ("BIA"), which upheld the IJ's final decision.  Following
the BIA's ruling, petitioner did not seek review in the United
States Court of Appeals of the BIA's holding within 30 days, as

contemplated by 8 U.S.C. § 1252(b)(1).  Instead, after allowing
the time for appeal to lapse, he filed a petition for habeas
corpus in this court pursuant to 28 U.S.C. § 2241, alleging due
process violations on the part of the IJ.

        The respondents have moved to dismiss the petition, arguing
that the court lacks jurisdiction because Sitcha failed to pursue
the required appeal to the Court of Appeals.  For the reasons
discussed herein, the court will allow the respondents' Motion to
Dismiss.

                        II.  <u>FACTUAL BACKGROUND</u>

        As this is a motion to dismiss, the court will recite the
facts taking the allegations in the complaint as true and drawing
all reasonable inferences in the petitioner's favor.  <u>Watterson
v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).

        In January 2001, nine persons disappeared after being taken
into custody by local police in Sitcha's village in Cameroon.
The mother of two of the disappeared persons asked Sitcha to
investigate.  His inquiries led him to believe that the nine
individuals, who came to be known as the "Bepanda Nine," had been
killed.  Sitcha told the parents of the missing persons what he
had heard and advised them to protest the incident.

        Sitcha contends that he worked mainly behind the scenes to
aid the parents of the Bepanda Nine, though he did help in
drafting fliers for a demonstration.  He also attended the
protest demonstration and was arrested by the police.  Sitcha
told the authorities that he was merely a passerby and not

                                -2-

involved in the demonstration, and after his wife produced his identification card Sitcha was released without charges. In addition to these activities, Sitcha authored a report which named individuals, including police officials, who may have known about the disappearance of the Bepanda Nine. He gave this report to someone from the Catholic Church on March 9, 2001. On March 26, 2001, men with a warrant searched his house and found a copy of the Bepanda Nine report. As a result, Sitcha was arrested and severely tortured.

Sitcha was charged with instigating trouble against the government and revealing government secrets. However, the prosecutor granted Sitcha a temporary release. He spent several days in a hospital and then hid in the rectory of a church. A priest advised him to leave Cameroon for his own safety. On April 9, 2001, Sitcha applied for a visa at the United States Embassy. He did not reveal his injuries or the fact that he had been tortured. Sitcha was granted a visa and traveled to the United States at the end of April 2001.

Sometime the following year, Sitcha was arrested and detained by the Department of Homeland Security for overstaying his visa. He filed a petition for asylum, claiming that if he were returned to Cameroon, he would be tortured or killed because of his political activities. On January 16, 2003, an IJ held a hearing to determine whether Sitcha was eligible for the protected status of a refugee.

At his hearing, Sitcha contended that, because of his

-3-

involvement in investigating and protesting the disappearance of the Bepanda Nine, his name had been placed on a death list.  In addition to his testimony, Sitcha submitted some documentary support of his account, including letters and newspaper articles.

The IJ initially determined, based on petitioner's testimony, that he had established the fact of past persecution in Cameroon based on his imputed political opinions. Consequently, the petitioner met the definition of a refugee (i.e. a person who has suffered past persecution and has a well-founded fear of future persecution on account of his membership in a particular social or political group).  The IJ concluded, despite some misgivings regarding the petitioner's credibility and the plausibility of his account, that overall his testimony was credible.  Accordingly, the IJ granted Sitcha's application for asylum on January 16, 2003.

On March 3, 2003, the Department of Homeland Security filed a motion to reopen the case based on new evidence.  The IJ reopened the case and, on September 18, 2003, held a hearing on the matter.  At this hearing, the government submitted a report from an assistant counselor attached to the American Embassy in Cameroon.  The counselor testified at the hearing via telephone that, based on his investigation, Sitcha had played no role in the investigations into the matter of the Bepanda Nine.  The counselor's conversations with attorneys associated with the families of the Bepanda Nine and with a Catholic priest who conducted an investigation into the incident revealed that none

-4-

of them had ever heard of Richard Sitcha.

Given his earlier concerns, the IJ found that this new evidence undercut vital aspects of his determination regarding Sitcha's credibility.  The IJ reversed his earlier finding and concluded that Sitcha was not a credible witness.  Thus, at the end of the September 18, 2003 hearing, the IJ issued a new finding to the effect that Sitcha failed to establish past persecution; the IJ denied petitioner's application for asylum, and he ordered Sitcha to be removed to Cameroon.  Consequently, the petitioner was placed in custody pending deportation.

During the proceedings before the IJ, Sitcha was represented by Attorney Anthony Collins.  On Sitcha's behalf, Attorney Collins filed an appeal with the BIA of the IJ's denial of Sitcha's application for asylum.  In this appeal, Attorney Collins advanced several arguments.  First, he contended that the IJ had erred in granting the government's motion to reopen because it did not meet certain requirements set forth in 8 C.F.R. § 1003.23(b)(3).  Second, he claimed that Sitcha's due process rights had been violated because the IJ did not hold a hearing on the Department of Homeland Security's motion to reopen.  Finally, he asserted that the IJ based his decision to reverse the earlier credibility finding on unreliable hearsay evidence.

After the filing of this appeal, but before the BIA issued its decision, two events occurred of significance.  First, on February 2, 2004, Sitcha was assaulted by his cellmate.

-5-

Petitioner spent a day in the clinic at the prison recovering from his injuries and was then was placed for one or two days in an isolation cell.  He claims that he suffered greatly because of this attack and that it took an enormous toll on his physical and emotional well-being.  Second, Sitcha fired his attorney.  On February 10, 2004, petitioner sent a letter addressed to the clerk of the BIA in which he stated that he had lost confidence in his attorney and that he would not acknowledge any acts taken by the attorney on his behalf after October 31, 2003.

On February 25, 2004, the BIA issued its decision rejecting all of the arguments offered on Sitcha's behalf and dismissing his appeal.  On February 27, 2004, Attorney Collins sent petitioner a copy of the BIA's decision, as well as a cover letter advising him to seek legal advice regarding his options.  Sitcha now contends that he did not read this letter or the attached decision from the BIA.  He claims that he believed that, having terminated the services of Attorney Collins and notified the BIA that he would not recognize any action taken on his behalf by Attorney Collins (including, apparently, the appeal to the BIA of the IJ's decision), the documents did not pertain to him or his case.  Also on February 27, the petitioner authored another letter, this time to a "trial attorney" at the Department of Homeland Security, enclosing a motion for release.

Following an unsuccessful appeal to the BIA, an alien has thirty days to seek review by a court of appeals.  8 U.S.C. § 1252(b).  Because, he now says, of his confusion about the appeal

-6-

mechanism, his limited English, and the residual trauma from the beating he had suffered three weeks earlier, petitioner never sought review of the BIA's decision by the Court of Appeals.

In lieu of a review by the Court of Appeals, Sitcha filed a pro se application for a writ of habeas corpus in this court on May 11, 2003.[1] His petition raises the same arguments advanced by his attorney before the BIA: the regulatory violation underlying the IJ's decision to reopen and the deficient evidentiary support for his altered credibility findings. Respondents, as noted, have moved to dismiss Sitcha's petition arguing that this court lacks jurisdiction and that he has failed to state a claim upon which relief may be granted.

## II. DISCUSSION

Respondents assert that this court lacks jurisdiction over Sitcha's petition because he failed to pursue his appeal to the Court of Appeals as required by 28 U.S.C. §§ 2341-51 and 8 U.S.C. § 1252(b), whose provisions give the courts of appeals jurisdiction to review decisions of administrative agencies, including orders of removal. 8 U.S.C. § 1252(b)(2) (stating that a "petition for review shall be filed with the [C]ourt of [A]ppeals"); Seale v. I.N.S., 323 F.3d 150, 153 (1st Cir. 2003); see Kaweesa v. Ashcroft, 345 F. Supp. 2d 79, 92 (D. Mass. 2004).

Counsel for the respondents sometimes characterizes petitioner's default as a failure to exhaust administrative

---

[1] Since this filing, however, Sitcha has retained counsel.

remedies.  The Immigration and Nationality Act, 8 U.S.C. § 1101
et seq., as amended by the Illegal Immigration Reform and
Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-
208, 110 Stat. 3009-546, provides that "[a] court may review a
final order of removal only if . . . the alien has exhausted all
administrative remedies available to the alien as of right."  8
U.S.C. § 1252(d).  Precedent is clear in this circuit that
failure to pursue administrative remedies is virtually always
fatal to a habeas petition.  Sayyah v. Farquharson, 382 F.3d 20,
26 (1st Cir. 2004) (holding that the administrative exhaustion
requirement in § 1252(d) equally applies to habeas petitions).

        It seems equally clear, however, that exhaustion of
administrative remedies occurs below the level of the Court of
Appeals.  See Kaweesa, 345 F. Supp. 2d at 99 (stating that "it
would strain section 1252's plain language to conflate judicial
remedies and administrative remedies").  The record is beyond
dispute in this case that Sitcha has satisfied the purely
administrative exhaustion requirement of § 1252(d), since he did
pursue his appeal to the BIA before filing a habeas corpus
petition.

        In addition to providing for administrative review of final
orders of deportation, however, the IIRIRA also provides for
judicial review of such orders.  Section 1252(a)(1) directs that
"[j]udicial review of a final order of removal . . . is governed
only by chapter 158 of Title 28," which establishes the Court of

Appeals as the forum in which to petition for review of final orders.  28 U.S.C. § 2347; § 1252(b)(2) (setting the courts of appeals as the venue for review of orders of removal).  Thus, the path of <u>administrative</u> review for final orders of deportation issued by IJs runs to the BIA; the path of <u>judicial</u> review of BIA decisions runs to the courts of appeals.

The question of whether the failure to pursue <u>judicial</u> remedies destroys jurisdiction over habeas petitions is one that the First Circuit has yet to settle definitively.  In <u>Seale v. I.N.S.</u>, the First Circuit expressly declined to address the "difficult and novel issue" of "whether the district court has habeas jurisdiction over a removal order where an alien's objection to the order would also have been susceptible to adjudication in the courts of appeals in a statutory direct review proceeding."  323 F.3d 150, 151, 153 (1st Cir. 2003); <u>see also Rivera-Martinez v. Ashcroft</u>, 389 F.3d 207, 209 (1st Cir. 2004) (recognizing the open question).

Courts in this circuit have from time to time encountered cases where an immigrant subject to an order of final deportation files a habeas petition without having pursued direct review in the Court of Appeals.  <u>See, e.g.,</u> <u>Rivera-Martinez</u>, 389 F.3d 207; <u>Seale</u>, 323 F.3d 150; <u>Foroglou v. Reno</u>, 241 F.3d 111 (1st Cir. 2001); <u>Kaweesa</u>, 345 F. Supp. 2d 79; <u>Arloo v. Ashcroft</u>, 238 F. Supp. 2d 381 (D. Mass. 2003).

Of the courts that have addressed the question, all reach the same conclusion: absent very exceptional circumstances,

-9-

district courts lack jurisdiction over habeas corpus petitions where the alien has failed to pursue an appeal to the Court of Appeals.  The rationales underlying this inevitable conclusion have varied to some extent, but the weight of authority is clear.

For instance, this court, in <u>Arloo v. Ashcroft</u>, 238 F. Supp. 2d 381, 382 (D. Mass. 2003), concluded that the petitioner had "waived his right to <u>habeas</u> review by failing to seek an appeal of the order denying his asylum claim from the First Circuit Court of Appeals."  It based this decision on <u>Foroglou v. Reno</u>, 241 F.3d 111 (1st Cir. 2001), in which the First Circuit stated that "habeas is preserved for those who have <u>no other way</u> to present on direct review constitutional or other legal challenges to a final order of deportation."  <u>Arloo</u>, 238 F. Supp. 2d at 383 (citing <u>Foroglou</u>, 241 F.3d at 114).  Thus, this court has already determined that <u>Foroglou</u> effectively answered the question whether an alien may contest a deportation order by filing a habeas petition in district court in lieu of seeking review before the Court of Appeals.  That answer, in all but very exceptional cases, was "No."

As noted above, however, since the <u>Arloo</u> decision, the First Circuit has twice characterized this question as open.  Nevertheless, decisions since <u>Arloo</u> have concluded that, except in very unusual cases, aliens unhappy with BIA decisions may not simply ignore the Court of Appeals and seek a remedy through a <u>habeas</u> petition.

In <u>Rivera-Martinez v. Ashcroft</u>, 389 F.3d 207 (1st Cir.

-10-

2004), the First Circuit upheld the district court's dismissal of a habeas petition where the lower court had found petitioner's claim to be "procedurally defaulted."  The petitioner, after failing to seek review by the Court of Appeals, had instead filed a habeas petition eight months after the BIA decision.  The First Circuit characterized this action as "a straightforward case of a petitioner attempting to use habeas to resurrect a claim that could have been and should have been presented on direct review." Id. at 210.  Thus, the First Circuit decided that the failure of the habeas petitioner to exhaust the judicial remedies, in the circumstances of that case, constituted a procedural default fatal to his claim.[2]  Id. at 210.

Shortly after the Rivera-Martinez decision issued, Chief Judge Young addressed the same question in Kaweesa v. Ashcroft, 345 F. Supp. 2d 79 (D. Mass. 2004) -- a highly exceptional case that proves the basic rule.  The petitioner in Kaweesa missed her original hearing on an application for asylum with the IJ, who entered an order of removal in absentia.  She appealed this decision to the BIA, and her appeal was denied.  Thereafter, a confidence man, posing as an immigration attorney and promising to file an appeal with the First Circuit, took the petitioner's money and ran off without taking any action.  After missing the

---

[2] Once again, the First Circuit declined to address directly the jurisdictional issue of whether the failure of an alien to pursue his or her appeal of a BIA decision to the Court of Appeals is always necessarily fatal.  Id. at 209 n.7; Seale, 323 F.3d at 152 (explaining why the court decided not to address the jurisdictional issue).

appeal deadline as a result of this swindle, the petitioner
sought relief via a habeas petition in district court.

In addressing the availability of a habeas remedy when there
was a right to review in the courts of appeals, Chief Judge Young
discussed the "prudential exhaustion requirement." He rejected
the notion that § 1252(d)'s administrative exhaustion requirement
could be read to include the requirement of pursuing an appeal of
the BIA's decision to the circuit courts. However, analyzing the
federal common law exhaustion requirement, he concluded that, in
general, "a court should not grant habeas relief unless a
petitioner has exhausted all available administrative and
judicial remedies." Id. at 100; see Sayyah v. Farquharson, 382
F.3d 20, 28-29 (1st Cir. 2004) (recognizing a common-law
exhaustion requirement but declining to address the issue since
the petitioner had clearly failed to exhaust his administrative
remedies as required under § 1252(d)). "[A] challenge to a
statute or regulation, which could ordinarily be raised on direct
review before the First Circuit, would not ordinarily be subject
to habeas review." Id.

The Kaweesa decision did recognize, however, that exceptions
might exist to the exhaustion requirement under federal common
law. Courts "can consider unexhausted claims where: (1)
available remedies provide no genuine relief; (2) irreparable
injury may occur without immediate judicial relief; (3)
administrative appeal would be futile; and (4) in certain
instances a plaintiff has raised a substantial constitutional

-12-

question." <u>Id.</u> (internal quotations omitted) (citing <u>Beharry v.</u>
<u>Ashcroft</u>, 329 F.3d 51, 62 (2d Cir. 2003)).  These exceptions may
also exist where the exhaustion requirements are imposed under
statutory regimes.  <u>See Sayyah</u>, 382 F.3d at 27 (recognizing that
"appropriate exceptions in extraordinary instances" exist to the
exhaustion principle under § 1252(d)).  In the end, Chief Judge
Young concluded that the circumstances in <u>Kaweesa</u> were
sufficiently extraordinary to permit consideration of the
petitioner's claims for habeas relief.

      In summary, the law of this circuit, as it is emerging, is
that habeas petitions in the immigration context -- absent
extraordinary circumstances -- ought not be entertained by
district court where the petitioner has failed to exhaust the
administrative <u>and judicial</u> remedies available under the
statutory scheme of the IIRIRA.

      Applying the foregoing law to the facts here, this court
must dismiss Sitcha's habeas corpus petition.  It is undisputed
that he failed to exhaust the statutory requirements for judicial
review before the Court of Appeals.  The issues that petitioner
asks the court to address in his habeas petition were all raised
before and rejected by the BIA and could have been presented to
the First Circuit.

      Unfortunately for the petitioner, the facts of this case do
not depict anything like the exceptional circumstances present in
<u>Kaweesa</u>.  Although he terminated his attorney, petitioner does
not suggest that his attorney was a charlatan.  The incident with

-13-

petitioner's cellmate occurred weeks before the deadline for appeal passed, during a time when petitioner was demonstrating a high level of competence in advocating on his own behalf. The petitioner's claimed lack of familiarity with the legal process and his language limitations are difficulties faced by many, if not most, aliens facing deportation and are thus unexceptional.

The simple truth is that, if the court were to recognize the viability of a habeas remedy in the circumstances of this case, the effect would be to create an alternate appellate route for all aliens aggrieved by a deportation order, available virtually at will. This the court cannot countenance. The petitioner filed the writ of habeas corpus over forty-five days after the deadline for any appeal of the BIA's final order expired. Under the circumstances, this action cannot be viewed as anything other than an attempt "to resurrect a claim that could have and should have been presented" to the Court of Appeals. <u>Rivera-Martinez</u>, 389 F.3d at 210.[3]

---

[3] Because the failure to pursue the statutory judicial remedy is fatal to petitioner's claim here, there is no need to address at any length the respondents' alternate argument that the habeas petition should be dismissed for failure to state a claim. It is worth noting, however, that the petitioner's substantive claims appear to be strikingly weak and that this is another factor demonstrating the lack of any exceptional circumstance.

Petitioner's first complaint, that the IJ failed to abide by certain regulations in deciding to reopen his case, would inevitably be found to be futile, because the decision to reopen a case is discretionary and therefore does not implicate any constitutional right. <u>See Lopez v. Ashcroft</u>, 267 F. Supp. 2d 150, 153 (D. Mass. 2003)(stating "denial of a motion to reopen presents a matter of discretion"). Petitioner's second claim, that the IJ used unreliable hearsay evidence in reconsidering petitioner's credibility, similarly does not rise to a constitutional level in light of the fact that the petitioner, through counsel, was

-14-

The clarity of the law makes this a relatively simple case from the viewpoint of cold logic.  It is not possible to conclude this memorandum, however, without recognizing the painful human reality behind this litigation and the possible serious consequences of today's decision.  The petitioner appears to be an intelligent, law abiding and sympathetic man, with many well wishers who passionately desire to see him remain in this country, who are prepared to support him here, and who fear the consequences for him if he returns to Cameroon.  Unfortunately, the government takes the position that the petitioner is not properly here and has not shown that he will be at significant risk back in his home country.  It is the responsibility of this court to apply the law as it exists to that strong disagreement, and the existing law requires the respondent's Motion to Dismiss be allowed.

### III.  <u>CONCLUSION</u>

For the foregoing reasons the respondents' Motion to Dismiss is hereby ALLOWED.  This case may now be closed.

It is So Ordered.

<u>/s/ Michael A. Ponsor</u>
MICHAEL A. PONSOR
U. S. District Judge

_____

permitted to cross-examine the witnesses.